## BEST, ADMINISTRATOR, v. DISTRICT OF COLUMBIA.

No. 477.   Argued February 9, 1934.—Decided March 5, 1934.

412

*Mr. John H. Burnett,* with whom *Messrs. James A. O'Shea* and *Alfred Goldstein* were on the brief, for petitioner.

*Mr. Robert E. Lynch,* Assistant Corporation Counsel, District of Columbia, with whom *Mr. William W. Bride,* Corporation Counsel, was on the brief, for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

Petitioner's intestate, a child five years of age, while playing on a wharf belonging to the District of Columbia, fell through a hole in the wharf and was drowned. This action was for damages for the alleged negligence of the District. After a jury had been impaneled, an opening statement was made by plaintiff's counsel and thereupon the court, on motion of the defendant and without taking testimony, directed a verdict in defendant's favor upon the ground that no cause of action had been stated. The Court of Appeals affirmed the judgment, 62 App. D.C. 271; 66 F. (2d) 797, and this Court granted certiorari.

414

The opening statement by plaintiff's counsel was as follows:

"This is a case against the District of Columbia filed by Mr. Best as administrator for the estate of his son. The facts that we will show you, briefly, are these, that Mr. Best's son was a child of five years of age and that on the day in question he and other children were playing down at a wharf close to where the Norfolk boats leave for Norfolk, and this wharf was operated and controlled by the District of Columbia; that they had there on this wharf some boards which extended over the water and they had in the wharf, as several witnesses will testify, from ten to thirteen holes of various and varying sizes; that one of the holes was quite large, approximately 3 feet in diameter; that this place was not fenced off; that it did have some sort of a barrier close to the street. There was no sidewalk, but the side portion was down and that the children went in and out at their pleasure, and that this son of Mr. Best went in there on this morning and while in there fell through one of the holes in this wharf.

" That there was no one there at the time to keep the children away, and that the watchman who was stationed arrived some time after this occurrence; that the children used this place to play on and play in; and that the District having maintained it in a condition such that it was dangerous to the life and limb of these children it is responsible for the child having been attracted there, going in and falling through this hole. Of course the child died, having been drowned; and the damages that the plaintiff has suffered as representing the estate of the child will be determined by you in your verdict if you are convinced by a preponderance of the evidence that we have established our case.

" That this wharf is not part of the public highway but is on private property of the District of Columbia, and

is not a place to which the public is admitted, but is a place where the boats dock and unload sand which is taken out and used by the District."

There is no question as to the power of the trial court to direct a verdict for the defendant upon the opening statement of plaintiff's counsel where that statement establishes that the plaintiff has no right to recover. The power of the court to act upon facts conceded by counsel is as plain as its power to act upon evidence produced. *Oscanyan* v. *Arms Co.*, 103 U.S. 261, 263. The exercise of this power in a proper case is not only not objectionable, but is convenient in saving time and expense by shortening trials. *Liverpool, N.Y. & P. S.S. Co.* v. *Commissioners,* 113 U.S. 33, 37. But the power is not properly exercised if the opening statement leaves doubt as to the facts or permits conflicting inferences. Where uncertainty arises either from a conflict of testimony or because, the facts being undisputed, fair-minded men may honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury. *Richmond & Danville R. Co.* v. *Powers,* 149 U.S. 43, 45; *Texas & Pacific Ry. Co.* v. *Harvey,* 228 U.S. 319, 324; *Gunning* v. *Cooley,* 281 U.S. 90, 94. The opening statement of counsel is ordinarily intended to do no more than to inform the jury in a general way of the nature of the action and defense so that they may better be prepared to understand the evidence. " If a doubt exists," said the Court in the *Oscanyan* case, *supra,* " as to the statement of counsel, the court will withhold its directions, as where the evidence is conflicting, and leave the matter to the determination of the jury." Plaintiff is entitled to the benefit of all inferences that may be drawn from his counsel's statement. To warrant the court in directing a verdict for defendant upon that statement, it is not enough that the statement be lacking in definiteness but it must clearly appear, after resolving all doubts in plaintiff's favor, that

no cause of action exists. See *Illinois Power & Light Corp.* v. *Hurley,* 49 F. (2d) 681, 684; *Stuthman* v. *United States,* 67 F. (2d) 521, 523.

The controversy in this case largely turns upon a difference of view as to the inferences to be drawn from the opening statement. Thus, respondent argues that there was a failure to show that " the wharf could be seen from the public space "; that " the child was attracted by the presence of the wharf itself, or any article or thing which may have been upon the wharf "; that " there was any latent or hidden danger at the place " where the child met his death; that " there was ever a prior accident to children at or near this wharf "; that " respondent invited or permitted petitioner's intestate or other children to enter or play on its wharf." But with respect to each of these circumstances (with a single unimportant exception) the opening statement of counsel permitted an inference in petitioner's favor. Thus, his counsel stated that " this place was not fenced off; that it did have some sort of a barrier close to the street. There was no sidewalk, but the side portion was down." From this, it was not inadmissible to infer that the wharf, without a fence and close to the street, with the side portion of the barrier down, " could be seen from the public space " and readily entered. According to the statement, the wharf was a place where boats unloaded sand which was taken out and used by the District. The inference might be drawn that the wharf had sandpiles which would be highly attractive to children. Counsel stated that there were " ten to thirteen holes " in the wharf, of varying sizes, one of them being about three feet in diameter. The existence of these holes manifestly constituted a danger and the statement does not require the conclusion that the danger would be obvious to young children playing in the sand on the wharf. The fact that the opening statement did not refer to any prior accident to children is inconsequen-

tial. On the question whether the District permitted children to enter and play on the wharf, counsel's statement gave basis for an inference that children had this permission. While counsel conceded that the wharf was "not part of the public highway" but "was on private property of the District" and was "not a place to which the public was admitted," he also stated that "the children went in and out at their pleasure" and that "the children used this place to play on and play in." He said that at the time of the accident there was no one "to keep the children away," as "the watchman who was stationed arrived some time after this occurrence." The statement permitted the inference that, while a watchman was customarily there, still the place was used as a playground by children, going in and out as they pleased.

In view of the fair import of the opening statement, it was error for the trial court to refuse to take testimony, and to direct a verdict for respondent. None of the decisions of this Court bearing upon the liability of the District warranted that course. The case of *United Zinc Co.* v. *Britt,* 258 U.S. 268, which respondent cites as controlling authority, dealt with a situation materially different. There children were fatally injured by going into a pool of water, poisoned by acids, which had accumulated in the lower part of a dismantled chemical factory, about 100 or 120 feet distant from a traveled way. The Court stressed the facts that it was "at least doubtful whether the water could be seen from any place where the children lawfully were," that there was "no evidence that it was what led them to enter the land," and that it did not appear "that children were in the habit of going to the place." The decision did not overrule *Railroad Co.* v. *Stout,* 17 Wall. 657, or *Union Pacific Ry. Co.* v. *McDonald,* 152 U.S. 262, although both were distinguished in the light of their particular facts. The Court said that the case of *Stout,*

where the child was injured on a turntable " near a road without visible separation " and where it appeared that children had played there before to the knowledge of employees of the railroad, was perhaps " as strong a case as would be likely to occur of maintaining a known temptation, where temptation takes the place of invitation." The Court added that in the very similar case of *Cooke v. Midland Great Western Ry. of Ireland* [1909] A.C. 229, a license was implied. Also distinguishing the case of *McDonald,* where a boy had fallen into burning coal slack " close by the side of a path on which he was running homeward from other boys who had frightened him," the Court said that " it hardly appears that he was a trespasser and the path suggests an invitation; at all events boys habitually resorted to the place where he was. Also the defendant was under a statutory duty to fence the place sufficiently to keep out cattle." The decision permitting recovery in those circumstances was said to be very far from establishing liability " for poisoned water not bordering a road " where it was " not shown to have been the inducement that led the children to trespass " and " not shown to have been the indirect inducement because known to the children to be frequented by others."

In *New York, N. H. & H. R. Co.* v. *Fruchter,* 260 U.S. 141, where a boy, climbing to the topmost girder of a municipal bridge and thence up a latticed tower, touched a live electric wire and was injured, the Court was unable to find any sufficient evidence from which a jury could properly conclude that the railroad company either directly or by implication " invited or licensed " him to climb to a point from which he could touch the bare wire thirty feet above the street. The cases of *Erie R. Co.* v. *Hilt,* 247 U.S. 97, and *Erie R. Co.* v. *Duplak,* 286 U.S. 440, turned upon the application of a statute of New Jersey as construed by the state court.

The question is one of negligence,—whether particular circumstances gave rise to a duty which had not been performed. Discussing general principles, the Court observed in the *Britt* case, that infants had no greater right to go upon other peoples' land than adults and that the mere fact that they were infants imposed no duty upon landowners to expect them and to prepare for their safety. On the other hand, it was said that while " temptation is not invitation, it may be held that knowingly to establish and expose, unfenced, to children of an age when they follow a bait as mechanically as a fish, something that is certain to attract them, has the legal effect of an invitation to them although not to an adult." The Court said that the principle if accepted should be very cautiously applied. We think that the present case falls within that appropriate application. Were the case merely one of an accessible wharf, it could not be said that the District would be subject to liability from the fact, without more, that a child strayed there and fell from the wharf into the water. The duty must find its source in special circumstances in which, by reason of the inducement and of the fact that visits of children to the place would naturally be anticipated, and because of the character of the danger to which they would unwittingly be exposed, reasonable prudence would require that precautions be taken for their protection. Here, on the face of the opening statement, the location of the wharf, unfenced, close to the street with the barrier partly down, taken with the use of the wharf for unloading sand, made it a likely place for children to play. Sandpiles close at hand would constitute " a bait " they would inevitably follow. According to the statement, they did follow it and they used the wharf as a playground at their pleasure. As the authorities of the District had reason to anticipate that use, there was a duty to take reasonable precautions either to

420

prevent it or to keep the wharf in such a proper state of
repair that children would not be exposed to the danger
of falling through holes.

*Judgment reversed.*