## DECATUR CORPORATION v. FRIEDMAN.
### No. 90259.

District Court of the United States for the
District of Columbia.

July 7, 1941.

Warren E. Magee and Arthur R. Murphy, both of Washington, D. C., for plaintiff.

Alfred M. Schwartz, of Washington, D. C., for defendant.

PINE, Justice.

Defendant has moved the court to vacate the verdict of the jury and judgment entered thereon in favor of plaintiff and to enter judgment for defendant in accordance with the motion of defendant for a directed verdict made by defendant at the close of all the evidence or in the alternative to grant a new trial.

Motion for Judgment for Defendant.

This action grows out of an agreement entered into on May 31, 1935, between plaintiff and defendant by the terms of which plaintiff agreed to sell and defendant agreed to buy for a stipulated consideration certain lots and parts of lots in Sq. 1067. The property in question is located a short distance from the Anacostia River between the Anacostia Bridge and the Pennsylvania Avenue Bridge. It is bounded by 14th Street on the west, L Street on the north and 15th Street on the east and the P. B. & W. R. R. on the south in Southeast Washington.

The agreement between the parties further provided that it was to be "null and void in the event that the property is not made available for industrial use or in the event the party of the second part (plaintiff) is unable to obtain wharfage facilities and the privilege of running a pipe line from said wharf to the property aforesaid."

It was the intention of the parties that the wharfage facilities, referred to in the agreement, were those incident to the mooring of vessels transporting petroleum or its products at a wharf to be erected, and the discharge of their cargo at the wharf into a pipe line for delivery to storage tanks to be erected on the land. The plaintiff contended that it was ready and able to perform its part of the agreement, but that defendant refused to perform. Defendant contended on the other hand that he was ready and able to perform, but that plaintiff was not.

In considering defendant's motion for a directed verdict, the court must construe the evidence most favorably to the plaintiff and give the plaintiff the full effect of every legitimate inference therefrom. If then, upon the evidence, so considered, reasonable men might differ, the motion should not be granted. On the other hand, if no reasonable man could reach a verdict in favor of plaintiff, the motion should be granted.[1]

Defendant, in support of the motion for judgment, contends that there was not sufficient evidence to justify submission to the jury the question of plaintiff's ability to obtain wharfage facilities and the privilege of running pipe lines. It is not contended by defendant that the zoning requirement of the agreement was not complied with, inasmuch as the zoning of Sq. 1067 was changed to an industrial area shortly after the date of the agreement. (Plaintiff's Exhibit No. 2)

Following is a resumé of the evidence on the question of plaintiff's ability to obtain wharfage facilities and the privilege of running a pipe line as stipulated in the agreement.

Congress under date of August 27, 1935, 49 Stat. 895, passed an act authorizing the Commissioners of the District of Columbia to grant permission to the plaintiff and its assigns to lay down not more than five pipe lines from a point within Sq. 1067 through 15th Street, S.E., to the pierhead line of the Anacostia River. (Plaintiff's Exhibit No. 3)

Before this act was passed, and under date of July 6, 1935, the Commissioners of the District of Columbia, in reporting to the Chairman of the House District Committee, determined that they had "no objection to a reasonable use of 15th Street, S.E., for the purpose of providing pipe lines from the Potomac River to Sq. 1067" and advised the Chairman "that legislation authorizing erection of a wharf at the end of 15th Street is unnecessary as this matter can be handled under exist-

[1] Best v. District of Columbia, 291 U. S. 411, 415, 54 S.Ct. 487, 78 L.Ed. 882; Gunning v. Cooley, 281 U.S. 90, 91, 94, 50 S.Ct. 231, 74 L.Ed. 720; Jackson v. Capital Traction Co., 69 App.D.C. 147, 148, 99 F.2d 380; Boaze v. Windridge & Handy, 70 App.D.C. 24, 102 F.2d 628; United States v. Ingalls, 72 App.D.C. 383, 114 F.2d 839, 840; Karlson v. United States, 8 Cir., 82 F.2d 330, 336; F. T. Dooley Lumber Co. v. United States, 8 Cir., 63 F.2d 384, 388.

694

ing law by the issuance of revocable permits". (Plaintiff's Exhibit No. 31)

Under date of July 15, 1935, the National Capital Park and Planning Commission[2] determined that it "had no objection to the granting of a lease to extend pipe lines from Sq. 1067 to the Anacostia River and the erection of a wharf and other river facilities in connection therewith provided these facilities conform to the plans of the Commissioners for the development of this area." (Plaintiff's Exhibits Nos. 15 and 30)

The Coordinating Committee, National Capital Park and Planning Commission, on which officials of the Government of the District of Columbia and the United States Engineers Office are represented, under date of June 25, 1935, at its 247th meeting, determined that the utilization of the foot of 15th Street at the Anacostia River for wharf facilities was agreeable to the Committee. (Plaintiff's Exhibit No. 32)

The evidence further showed a willingness on the part of the United States Engineers Office to issue a permit for a wharf in the Anacostia River adjacent to the foot of 15th Street (testimony of witness Schmitt). It is true that part of 15th Street adjacent to the Anacostia River, which is an unimproved street, previously had been leased to the Washington Yacht Club by the Chief of Engineers, U. S. Army, with the consent of the District of Columbia, the lease being revocable in thirty days, but it might reasonably be inferred from the evidence that this revocable lease presented no obstacle in view of the Congressional action, supra, and the attitude of the government agencies above expressed to the utilization of the terminus of 15th Street (which was a 6½ foot sea wall) to which a wharf might be annexed and to the utilization of 15th Street for access to the wharf.

With respect to both the pipe line and the wharf facilities, plaintiff offered evidence, which was disputed by the defendant, that it did not go further and actually obtain the privilege of running the pipe line and did not obtain the permit for the construction of a wharf and a lease of that part of the mainland which would adjoin the proposed wharf because the de-

fendant notified the plaintiff that he would not or could not go through with the contract and would not submit plans requisite for the construction work required, thereby frustrating the plaintiff from making a showing, in the form of actual permits issued, of uncontrovertible ability to obtain wharfage facilities and the privilege or running a pipe line from the wharf to the property involved.

■ In view of the foregoing evidence and the inferences legitimately deducible therefrom, I am of the opinion that reasonable men might differ as to whether the plaintiff had the ability to "obtain wharfage facilities and the privilege of running a pipe line" as stipulated by the agreement, and, under those circumstances this question was one for the jury, provided the Government agencies had the legal authority to make the decisions or commitments above set forth.

The Act of Congress, supra, authorized the Commissioners of the District of Columbia to grant permission to the plaintiff and its assigns to lay down pipe lines for the carriage of petroleum and its products from Sq. 1067 "in and through Fifteenth Street Southeast due south to the pier-head line of the Anacostia River." This contemplates the utilization of 15th Street to its terminus and beyond into the river to the pier head line and contemplates a wharf.

■ The fee title to this part of 15th Street is in the United States. Morris v. United States, 174 U.S. 196, 19 S.Ct. 649, 43 L.Ed. 946. It is stipulated that the Anacostia River at this point is a navigable river.

The act of Congress approved July 1, 1898, 30 Stat. 570, 40 U.S.C.A. § 60, vested jurisdiction and control of the street parking in the streets and avenues in the District of Columbia in the Commissioners of the District of Columbia.

The act of Congress approved March 3, 1899, 30 Stat. 1377, 1378, 40 U.S.C.A. §§ 107, 108, T. 20, § 1579, D.C.Code 1929, vests in the District Commissioners exclusive charge and control of all wharf property belonging to the United States within the District of Columbia within the pier lines and authorizes the Commissioners

2 This Commission is charged with the duty of preparing, developing and maintaining a comprehensive, consistent and coordinated plan for the national capital and its environs, including waterfronts. Act of Congress approved June 6, 1924, as amended, T. 40, § 71, U.S.C.A.

of the District of Columbia and the Chief of Engineers to make regulations in regard to building wharves and the rental thereof, the rents collected to be covered into the Treasury, one-half to be placed to the credit of the United States and one-half to the credit of the District of Columbia.

Section 10 of the Act approved March 3, 1899, 30 Stat. 1151, 33 U.S.C.A. § 403, prohibits the building of any wharf in any navigable river except on plans recommended by the Chief of Engineers and authorized by the Secretary of War. The information circular issued by the War Department in respect of applications for permits for construction work in navigable waters, including wharves, provides that applications for permits may be addressed to the Secretary of War, but will receive equal attention if addressed to the District Engineer in charge of the District in which the work lies, and that such officers have general authority to issue permits for certain classes of work. It further suggests that the desired permit will be more quickly secured by sending the application directly to the District Engineer than by any other way. (Plaintiff's Exhibit No. 13)

■ From the foregoing I am of the opinion that legal authority was not lacking for the decisions or the commitments of the government agencies herein above set forth.

Defendant in support of the motion for judgment also contends that there was not sufficient evidence to justify submission to the jury the question of plaintiff's ability to deliver good title to the land plaintiff agreed to convey.

Plaintiff was the owner in fee simple of lots 10 and 12 to 18 in Sq. 1067 subject to two deeds of trust and certain unpaid taxes. There was testimony that arrangements had been made to release the second trust and that money was available to pay off the first trust and taxes. Both trust and taxes could have been paid if money was available for such purposes.

The balance of the property in question involved in the agreement are parts of lots 19 and 20 in Sq. 1067 lying north of the railroad tracks, title to which was vested in the P. B. & W. Railroad Company subject to two general mortgages and a possibility of reverter as to a part of one lot.

Plaintiff entered into an agreement with the railroad company in the form of a letter offering to purchase such parts of lots 19 and 20 in Sq. 1067 at a price of $6,300 net to the railroad company and an acceptance of the offer by the railroad company. The possibility of reverter was cleared up by a quit-claim deed obtained by plaintiff. Release of the general mortgages was agreed to.

The defendant contends however, that the offer and acceptance were subject to certain conditions, namely that the railroad company was not to be liable to provide lateral support for any part of the surface of the land conveyed; that the grantee was obligated to use diligence to prevent the drainage of water from the land conveyed onto the land of the railroad company, and that the railroad was not liable to construct any fence between the land granted and the land of the railroad adjoining on the south.

The offer to purchase referred to the land as the parts of lots 19 and 20 described in a tentative deed drawn up by the railroad company a long time previously in connection with a cancelled contract between the Decatur Corporation and the railroad company for the acquisition of the same property and in that deed there were conditions of the character mentioned. Also, the deed actually delivered to the plaintiff in February, 1936 at the time the property was sold to a third party, after the alleged default by the defendant, contained such conditions. However, I cannot subscribe to the view that the offer to purchase which, for a short description, simply stated that "the parts of lots 19 and 20 to be bought include the land described in the last tentative deed drawn up by the railroad company," and its acceptance by the railroad, constituted a contract containing such conditions. Instead, I am of the opinion that the reference in the offer to the last tentative deed is merely for the purpose of identification of the land and to avoid the necessity for a detailed metes and bounds description partly covering two legal size pages of single spaced typewriting in a letter making an offer to purchase. In other words, I believe the reference to the last tentative deed was a convenient method of referring to the property in question.

Furthermore, the fact that the deed, as finally delivered, contained such conditions is not persuasive, in that the third party purchasing from plaintiff may not have objected to them.

There is no evidence that defendant refused to settle because of those conditions. Instead there was testimony that he took little interest in the matter except to obtain more time in an attempt to consummate a deal of his own with an oil company in connection with the property, consummation of which, according to such testimony, was determinative of whether he would perform his agreement with the plaintiff.

■ In these circumstances, I cannot agree with the defendant's contention that there was not sufficient evidence to justify submission to the jury the question of plaintiff's ability to deliver good title to the land plaintiff agreed to convey.

■■ Neither is there merit to the contention of defendant that failure to make a tender of a deed is fatal to plaintiff's case as a matter of law. Such an act is unnecessary where the vendee announces his unwillingness to perform on a ground untenable in law and the vendor has certain means of procuring that which he contracted to deliver.[3] Plaintiff offered evidence to this effect, which was disputed by defendant, and the question therefore became one for the jury's determination under appropriate instructions. Defendant makes no contention that the instructions were erroneous in this regard.

The motion for judgment in accordance with the motion of defendant for a directed verdict at the close of all the evidence is accordingly denied.

### Motion for New Trial

■ In support of this motion defendant asserts as error the denial by the court of his Prayer No. 5 to the effect that the jury are instructed as a matter of law that neither the Secretary of War nor any governmental agency under the Secretary of War nor the District of Columbia nor the Commissioners thereof were empowered to lease 15th Street, S.E., at the water front to the plaintiff nor empowered to lease the same for private purposes inasmuch as 15th Street, S.E. at the water front is a public street. In view of what has been said under the heading "Motion for Judgment", I am of the opinion that no error was committed in refusing this prayer.

■ I find no error in permitting the witness Lambert to testify concerning the commitments made by the witness Schmitt. Mr. Lambert was attorney for the plaintiff in this transaction. Plaintiff was under obligation to obtain wharfage facilities. The Washington District of the United States Engineers Office was one of the government agencies from which wharfage facilities were to be obtained. Mr. Schmitt was the principal engineer in the Washington District of the United States Engineers Office. Whether plaintiff was able to obtain wharfage facilities was one of the issues of the case. What the plaintiff, acting through Mr. Lambert, obtained from the United States Engineers Office was pertinent. Mr. Lambert's testimony of what he, acting for the plaintiff, had obtained from the Engineers Office in the way of wharfage facilities was admissible.

I have considered the other points set forth in the motion for a new trial and do not find that they justify the granting of this motion.

The motion for a new trial is accordingly denied.

---

[3] Hazleton v. Le Duc, 10 App.D.C. 379; Bruffy v. Baker, 69 App.D.C. 266, 100 F.2d 439; Brown v. Lee, 5 Cir., 192 F. 817.