No. 18,262.

EDGAR G. BARTH *v.* BURT CHEVROLET, INC.

(342 P. [2d] 637)

Decided August 3, 1959.

Mr. JOSEPH W. ESCH, Mr. WILLIAM R. YOUNG, for plaintiff in error.

Mr. EMORY L. O'CONNELL, Mr. CECIL R. DITSCH, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

THE parties appear in this court in reverse order from their appearance in the trial court and will be referred to herein by name, or as plaintiff or defendant, as they appeared in the trial court.

The action was brought by the plaintiff to recover $2,302.06 alleged to be owing following the seizure and sale of a truck under the terms of a chattel mortgage. The said mortgage secured an original indebtedness of $3,987.36 and was signed by defendant December 1, 1955, at which time he purchased the truck from the plaintiff for the total purchase price of $4,994.42. The mortgage indebtedness was payable in two installments, the first of which was payable one year from the date of the instrument. Complaint in the action was filed September 25, 1956, before any payment was due. An affidavit in attachment was filed at the same time and a writ of attachment issued pursuant to which the defendant's bank account was seized. No service of attachment writ was ever made upon the defendant and no notice of levy upon his bank account was served upon him. Summons and complaint in the action were served upon the defendant in Linn County, Oregon, on October 12, 1956.

On November 7, 1956, the defendant filed his answer in which he denied that there had been any default authorizing foreclosure of the chattel mortgage. Two counterclaims were filed by the defendant, the first of which sought judgment for $3,987.36 plus $25.00 for each day the truck was out of the possession of the defendant, together with $5,000.00 exemplary damages for the wrongful taking of the truck by the plaintiff and the conversion thereof to the use of the plaintiff. The second claim of defendant sought damages for the alleged wrongful attachment of defendant's bank account.

The case came on for trial to a jury on January 2, 1957. The plaintiff moved for dismissal of the defendant's counterclaim on the opening statement of counsel for the

defendant. We deem it advisable to quote from that statement the following:

"Mr. ESCH: May it please the Court, Mrs. Johnson and Gentlemen of the Jury: We believe that the evidence will show on behalf of the defendant that the following facts are what transpired in connection with this deal. The evidence will show that Mr. Barth, the defendant, who is a farmer, bought the truck in question from Burt Chevrolet Company in Englewood on December 1, 1955. That the truck at the time was a 1955 truck. Burt Chevrolet sold it to him for better than $4900.00, a very liberal price for the truck. Under the terms of the chattel mortgage which was signed by Mr. Barth, Burt took in on trade a down payment of the truck that Mr. Barth had previously owned and agreed in addition that under the terms of the chattel mortgage payments would be annually, one each year, the first payment being due December 1, 1956, and so forth until the chattel mortgage was paid off.

"Mr. Barth on or about August of 1956 had occasion to sell his ranch located out near Elizabeth, Colorado. He did sell the ranch. He and his wife had separated and he determined after the sale of the ranch that he had a trip coming to him, a little change of scenery, that he would take a trip. He went to Burt Chevrolet Company and talked to one of the men in the truck department there and said to him that he would like to have them sell the truck for him. That he would like to have them get whatever he owed on the truck out of it. If they were unable to do that, why, then a few hundred dollars, that he would pay the difference. Pursuant to that conversation he left the papers on the desk of one of the men there in the truck department. Prior to getting ready to leave town, just a few days before he left, in order to make the truck more salable he put in about $75.00 worth of work on it or had it put in. The evidence will show that just a few days before he left town he took the truck to the Davidson Motor Company in Engle-

wood. He had the truck porcelainized. He had the wheels packed, greased. The motor was tuned up. The reason for doing that was he felt it would bring a better price and would make it more salable.

"Before he left town he went to a friend of his, Ernie Lloyd who lives out east of here, who is also a farmer, asked Mr. Lloyd or made a deal with Mr. Lloyd rather, that Mr. Lloyd could use the truck for a couple of weeks in getting in his hay. This was in September of 1956. Mr. Lloyd needed a little extra transportation. It was agreed that Mr. Barth would be paid whatever the truck was worth to Mr. Lloyd. He was to use the truck for about two weeks. Then Mr. Barth advised him that at the end of that period he was to take the truck in to Burt Chevrolet, that they had agreed to sell it for him.

"Mr. Barth left town on or about September 24 of 1956. His plans were not too definite as to where he was going, but he intended to go among other places to Scio, Oregon, where he had friends and he planned on being back here along about the first of January. He had not gotten out of town, I don't see how he could have, it was the next day Burt Chevrolet sent a man by the name of Overmyer out to Ernie Lloyd's to get the truck. Mr. Overmyer went to Ernie Lloyd and said that he wanted the truck to take it to Burt Chevrolet and Ernie Lloyd didn't think too much about it. He felt a little bit annoyed because he planned on using it, but he knew that Mr. Barth had told him that he was leaving the truck with Burt to have it sold. Mr. Overmyer advised Ernie Lloyd that he had a sale for the truck. He asked Ernie Lloyd if he would like to buy it, quoted to him a higher price than Mr. Lloyd felt that he could pay. Mr. Lloyd let him take the truck. He didn't say anything about repossessing it or anything else.

"So Mr. Barth was in Oregon along about two or three weeks later. He had met with his friend up there. He found that he had a use for the truck, that he could use it up there in hauling wood or in some other type of

hauling. He called a friend of his here in that connection, said he planned on coming to get his truck. He found that Burt Chevrolet had come and got it, that they claimed that they had repossessed it because the truck was in danger of being lost. The next thing Mr. Barth knew was that his checks started bouncing. Burt Chevrolet had tied up his checking account so that his checks would not clear.

"The evidence will show that they never at any time served him which any papers as to tying up his checking account, although they did know he was at Scio, Oregon, and they were planning to get papers filed in this case against him. It will further show that Burt Chevrolet, according to their complaint claims that they sold this truck for $1600.00, the truck which nine months previously had been worth $4900.00. We will show by evidence of experts that the price that Burt claimed that they sold this truck for when they repossessed is excessively low, that the truck was a very valuable truck worth a great deal more than that. It had special equipment on it. It was a cattle-grain-feed combination.

"That by virtue of the action of Burt Chevrolet they never made any attempt to get in touch with Mr. Barth. All they did was grab the truck quick, claim they sold it, never made any attempt to get in touch with him or find out if he was gone for good, if he planned on making the payments. Mind you, they picked up this truck before the first payment was due. The first payment was not even due until November 1, 1956.

"We will show that as a result of these actions Mr. Barth suffered great loss, not only on losing the truck, but also in having to come back to Littleton earlier than he had planned, because of the damage to his credit in having his checks bounce, the loss of use of the truck which he could have used in business up there in Oregon to haul wood or fish, something like that, he actually had a deal made to haul wood. After we have shown you all

those things, we believe that you will feel as we do that Mr. Barth has been seriously damaged."

Counsel for plaintiff contended, in support of the motion to dismiss, that it appeared from the opening statement that plaintiff had permission to take the truck and sell it, that defendant on his own statement had made arrangements to that effect; and that his counter-claim was premised upon the theory of unlawful taking and conversion of the truck. The defendant contended that the possession of plaintiff, according to the complaint, was premised upon an alleged default in the terms of the chattel mortgage, and not on a separate agreement with the defendant that the truck should be taken and sold; that the repossession of the truck by the plaintiff was not pursuant to or in harmony with the agreement made concerning the sale of the truck and was therefore unlawful, and that the conduct of the defendant was such as to form the basis for an action in conversion.

The court sustained the motion to dismiss as to the first claim. The case proceeded to trial on the plaintiff's complaint, and on the remaining count of the counter-claim for wrongful attachment of the bank account of the defendant.

At the conclusion of the trial the plaintiff moved for a directed verdict on the grounds that there was no evidence to establish liability on the second phase of the counterclaim; and that no issues of fact remained for the consideration of the jury following the dismissal of defendant's claim relating to the asserted unlawful seizure of the truck. The motion for directed verdict was granted. The trial court, in granting the motion, commented to the jury as follows:

"THE COURT: Mrs. Johnson, and Gentlemen of the Jury: In Chambers the plaintiff made a motion for a directed verdict. The Court has sustained that motion on the theory that there has not been any testimony here to warrant submitting it to you on the issue of

damages. The only testimony here, of course, is that the truck was turned over to the plaintiff for sale; that the plaintiff thought that there was a violation of the terms of the chattel mortgage and took possession of it under those conditions. The testimony, and the only testimony, was that it was sold and three bids were had upon this truck and the highest bid was $1,685.00. Subtracting that, of course, from the amount of the chattel mortgage left a balance of $2,302.36. Plaintiff would be entitled in addition thereto to interest from the 25th of September 1956, to date."

Judgment was entered accordingly and the defendant brings the case here on writ of error.

Questions to be Determined.

FIRST: *Did the trial court err in granting the motion, made by counsel for the plaintiff, to dismiss the counterclaim of defendant for conversion of the truck?*

The question is answered in the affirmative.

■ In reversing a judgment of the trial court under circumstances akin to those present in the instant case this Court stated in *Shore v. Denver Building and Construction Trades Council, et al.,* 128 Colo. 424, 263 P. (2d) 315:

"Motions for judgment based upon opening statements of counsel should be considered with extreme caution; should be granted only where it is clearly apparent that counsel has included in his opening statement every element possible to come within the scope of his proof; and that having done so, it is manifest that his client is entitled to no relief or judgment in his favor. *Rock River Investment Company v. Mountain Finance Corporation,* 94 Colo. 539, 31 P. (2d) 914; *Iacino v. Brown,* 121 Colo. 450, 453, 217 P. (2d) 266; *Best, Administrator v. District of Columbia,* 291 U.S. 411, 54 Sup. Ct. 487, 78 L.Ed. 882; *Wasmer v. Missouri Pacific Railway Co.,* 116 Mo. App. 215, 148 S.W. 155."

To like effect is the general rule stated in 88 C.J.S. 322, Section 161.

The position of the plaintiff as stated in its complaint is that the truck was repossessed under the terms of the chattel mortgage, and particularly that provision thereof which reads as follows:

"In the event * * * the mortgagee deems the property in danger of misuse or confiscation * * * the mortgagee shall have the right, at his or its election to declare the unpaid balance * * * to be immdiately due and payable. Further in any such event, mortgagee * * * may take immediate possession of said property without demand * * *."

The said portion of the mortgage also provides for sale of the property at public or private sale.

The opening statement to the jury, made by counsel for defendant, indicated generally that the defendant had arranged with one Lloyd to use the truck for "a couple of weeks"; that Lloyd was to take the truck to plaintiff's place of business; that the defendant expected to get "whatever he owed on the truck" upon the sale thereof, or within a "few hundred dollars" of that amount. The opening statement clearly shows that the conditions of the agreement allegedly made between the plaintiff and the defendant were ignored by the plaintiff in connection with the seizure and sale of the truck.

Within the rule above quoted from *Shore v. Denver Building and Construction Trades Council,* supra, there was nothing in the opening statement of counsel for defendant which warranted dismissal of his counterclaim.

Several questions were clearly open for determination by the jury among which we mention the following:

1. Did the plaintiff repossess under the chattel mortgage, or did it take possession in accordance with its agreement to sell?

2. If it took possession in accordance with its agreement to sell, was it acting within the scope of its authority?

3. If it took possession under the chattel mortgage, as is indicated in its pleadings, was the decision that its security was in danger or misuse and confiscation arrived at arbitrarily or did it act in good faith?

4. Did the fact that repossession occurred one day after the defendant left the jurisdiction, and that the chattel was sold one day after that for a price of roughly one-third of the original purchase price for a truck ten months old, without notice of any kind to the defendant, indicate undue haste on the part of the plaintiff to deprive the defendant of any rights he might have had in connection with this transaction?

SECOND: *Did the trial court err in directing a verdict in favor of the plaintiff and entering a judgment against the defendant for the amount claimed in the complaint?*

The question is answered in the affirmative. It is apparent from what is said in discussing the hereinabove stated first question that the court erred in directing a verdict and entering judgment for the plaintiff.

The judgment is reversed and the cause remanded for trial upon all issues framed by the pleadings.

MR. JUSTICE DAY and MR. JUSTICE FRANTZ not participating.