**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Plaintiff,**

v.

**SOUTHERN UTILITIES, et al., Defendants.**

**Civ. A. No. 81–81–ATH.**

United States District Court, M.D. Georgia, Athens Division.

Jan. 11, 1983.

George C. Reid, Atlanta, Ga., for plaintiff.

Gary B. Blasingame, Gene Mac Winburn, Athens, Ga., Joe B. Sartain, Jr., Gainesville, Ga., Daniel M. Dibble, Kansas City, Mo., for defendants.

OWENS, Chief Judge:

Fidelity and Deposit Company of Maryland (Fidelity and Deposit Company) issued and delivered an insurance policy covering employee dishonesty to Contrech, Inc., 2333 Indiana Street, Kansas City, Missouri. Southern Utilities, Inc. (Southern Utilities) of Athens, Georgia was added as an additional insured effective October 29, 1979. By letter dated September 29, 1980 from its attorney, Southern Utilities notified Fidelity and Deposit Company "of a loss or of an occurrence which may give rise to a claim for a loss..." and advised that it then appeared that "an employee of the company, John Hayworth, and perhaps others, may be responsible for the loss of money or other property by the insured company by reason of fraudulent or dishonest acts within the meaning of Insuring Agreement I...." Insuring Agreement I provides Employee Dishonesty Coverage up to $1,000,000.00.

On March 6, 1981 Southern Utilities, through its attorneys, submitted a formal proof of loss in the amount of $261,685.01 reserving the right to increase the amount if a dispute with a subcontractor is resolved unfavorably. Attached to the proof of loss was the affidavit of Ronald R. Young, Chief Executive Officer of Southern Utilities, describing the facts of the claim.

Following the commencement of a lawsuit in the Circuit Court of Jackson County, Missouri by Southern Utilities against Fidelity and Deposit Company this complaint was filed by Fidelity and Deposit Company against Southern Utilities and John M. Hayworth, Jr. seeking a declaratory judgment as to Southern Utilities' claim and a judgment against defendant Hayworth for any sums determined to be owed Southern Utilities on account of defendant Hayworth's dishonest conduct.

Following the completion of extensive discovery and consideration by the court, the court held pretrial conferences on April 13 and November 9, 1982, and after hearing from counsel advised that the court seriously questioned that Southern Utilities' evidence in support of its claim is sufficient to survive a motion for a directed verdict[1] by Fidelity and Deposit Company. The parties were invited to submit briefs of law and all the evidence intended to be presented at trial, and informed that the court would then consider the evidence as if it had all been presented to a jury by Southern Utilities and a motion for directed verdict had been made by Fidelity and Deposit Company. The stated purpose of doing so is to avoid empanelling a jury to listen to a hopeless case.

Southern Utilities disputes the propriety of the procedure fashioned by the court and strongly suggests that the evidence should be heard and considered by a jury and then considered on motion for directed verdict. Fidelity and Deposit Company concurs in the court's approach.

■ This court realizes that a pretrial conference held pursuant to Federal Rules of Civil Procedure 16[2] is not intended to

---

1. Fed.R.Civ.P. 50(a) states as follows:

   "A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury."

2. Fed.R.Civ.P. 16 states as follows:

   "In any action, the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider

serve as a substitute for trial, and that it is not within the power of the pretrial judge to determine disputed issues of fact and render a decision after all the issues have been presented. However, the court notes that judgment may be ordered following a pretrial conference if there is no *triable* issue left at the end of the discussion. *See,* 6 Wright & Miller, *Federal Practice and Procedure, Civil* § 1525, at 592–93 (1971) (footnotes omitted). Stated more fully,

> "Rule 16 permits the holding of pretrial conferences to consider, inter alia, simplification of the issues, the possibility of obtaining admissions of fact which will avoid unnecessary proof, and '[s]uch other matters as may aid in the disposition of the action.' Plaintiff is, of course, pro se, and any use of the pretrial conference must accommodate that reality. Fortunately, Rule 16 is intended as a flexible device to be adapted to the problems of the particular case. See 6 C. Wright & A. Miller, Federal Practice & Procedure, Civil § 1521, at 565–66 (1971). The pretrial conference is never to be used as a substitute for trial: the Court is not empowered to resolve disputed issues of fact and render a decision after presentation of the issues. Nevertheless, just as the Court may render judgment on immaterial issues and issues for which there is no dispute of material fact, 'judgment may be ordered ... if there is no triable issue left at the end of the discussion.' Id. § 1525, at 592–93. See Newman v. Granger, 141 F.Supp. 37, 39 (W.D.Pa.1956), aff'd per curiam, 239 F.2d 384 (3d Cir. 1957) (agreement on all necessary and

(1) The simplification of the issues;

(2) The necessity or desirability of amendments to the pleadings;

(3) The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof;

(4) The limitation of the number of expert witnesses;

(5) The advisability of a preliminary reference of issues to a master for findings to be used as evidence when the trial is to be by jury

(6) Such other matters as may aid in the disposition of the action.

relevant facts permits decision on the merits). See also *Matlack, Inc. v. Hupp Corp.,* 57 F.R.D. 151, 160 (E.D.Pa.1972). Cf. *Joiner Systems, Inc. v. AVM Corp., Inc.,* 517 F.2d 45, 47–48 (3d Cir.1975)."

*Pifcho v. Brewer,* 77 F.R.D. 356 (M.D.Penn. 1977) at 357.

■ "Whether the evidence is sufficient to create an issue of fact for the jury is a question of law to be determined by the court." *See,* 9 C. Wright & Miller, *Federal Practice and Procedure, Civil* § 2524, at 541 (1971) (footnotes omitted). The court may determine the sufficiency of the evidence regardless of the fact that the evidence has not been presented to a jury at trial. *See,* 9 C. Wright & Miller, *Federal Practice and Procedure, Civil* § 2533, at 584 (1971) (footnotes omitted); *Cf. Best v. District of Columbia,* 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882 (1933) (The trial court may, and should, direct a verdict for the defendant upon the opening statement of plaintiff's counsel where that statement establishes that the plaintiff has no right to recover.).

The court notes the following language in *Best:*

> "There is no question as to the power of the trial court to direct a verdict for the defendant upon the opening statement of plaintiff's counsel where that statement establishes that the plaintiff has no right to recover. The power of the court to act upon facts conceded by counsel is as plain as its power to act upon evidence produced. *Oscanyan v. Winchester Repeating Arms Co.,* 103 U.S.

"The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. The court in its discretion may establish by rule a pre-trial calendar on which actions may be placed for consideration as above provided and may either confine the calendar to jury actions or to non-jury actions or extend it to all actions."

261, 263 [26] L.Ed. 539, 541. The exercise of this power in a proper case is not only not objectionable, but is convenient in saving time and expense by shortening trials. *Liverpool, N.Y. & P.S.S. Co. v. Emigration Comrs.,* 113 U.S. 33, 37, 28 L.Ed. 899, 900, 5 S.Ct. 352 [353]. But the power is not properly exercised if the opening statement leaves doubt as to the facts or permits conflicting inferences. Where uncertainty arises either from a conflict of testimony or because, the facts being undisputed, fair-minded men may honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury. *Richmond & D.R. Co. v. Powers,* 149 U.S. 43, 45, 37 L.Ed. 642, 646, 13 S.Ct. 748 [749]; *Gunning v. Cooley,* 281 U.S. 90, 94, 74 L.Ed. 720, 724, 50 S.Ct. 231 [233]. The opening statement of counsel is ordinarily intended to do no more than to inform the jury in a general way of the nature of the action and defense so that they may better be prepared to understand the evidence. 'If a doubt exists,' said the Court in the *Oscanyan* Case, 103 U.S. 261, 26 L.Ed. 539, supra, 'as to the statement of counsel, the court will withhold its directions, as where the evidence is conflicting, and leave the matter to the determination of the jury.' Plaintiff is entitled to the benefit of all inferences that may be drawn from his counsel's statement. *To warrant the court in directing a verdict for defendant upon that statement, it is not enough that the statement be lacking in definiteness but it must clearly appear, after resolving all doubts in plaintiff's favor, that no cause of action exists.* See *Illinois Power & Light Corp. v. Hurley* (C.C.A. 8th) 49 F. (2d) 681, 684, 30 N.C.C.A. 602; *Stuthman v. United States* (C.C.A. 8th) 67 F. (2d) 521, 523" *Best,* 291 U.S. at 415, 54 S.Ct. at 489, 78 L.Ed. at 885 (emphasis added).

■ Directing a verdict after considering not only the evidence to be presented but also the law expressed in a narrative of fact, trial brief, and pretrial conference is analogous to directing a verdict after an opening argument describing the evidence to be presented. In fact, there are many advantages to directing a verdict before a trial is staged and commenced, such as: (1) a jury is not empanelled only to be dismissed; (2) the court is apprised not only of the facts to be presented but also of the law to be argued; (3) the court's trial docket is one case less congested, leaving more time for cases involving issues which only a jury can decide.

In light of the above-described advantages and the policy behind F.R.Civ.P. 16 to save the court and parties time and money by litigating only truly disputed issues of fact, the court finds no reason why the rule allowing a directed verdict following an opening argument should not be utilized following pretrial submission of all the evidence intended to be submitted to a jury.

Even though the court is of the opinion that a directed verdict may be awarded in a proper case after reviewing the evidence to be presented as described in a narrative of fact and pretrial conference, it must analyze the evidence to determine whether in this case, ". . . after resolving all doubts in plaintiff's favor, that no cause of action exists." *Best,* 291 U.S. at 415, 54 S.Ct. at 489, 78 L.Ed. at 885 (citations omitted); *See,* 9 C. Wright & Miller, *Federal Practice and Procedure, Civil* § 2524 at 544–45 (1971) (footnotes omitted).

The facts of this case reveal that Southern Utilities seeks to recover from Fidelity and Deposit Company on a policy of insurance issued to Southern Utilities' parent company, Contrech, Inc. (which corporation has its principal place of business in Kansas City, Missouri), for loss resulting from the allegedly fraudulent conduct of one of its employees, John Hayworth. As stated at page 15 in the narrative of fact submitted by Southern Utilities:

"The cardinal fact upon which plaintiff relies to demonstrate the dishonesty of Hayworth is that he is (sic) ordered and had delivered and caused Southern Utilities to pay for materials of a cost to Southern Utilities of approximately $165,000 more than those necessary to

complete the job. Materials of that value were never incorporated into the job and never recovered. Their disappearance has not yet to this day been explained. These facts and many others, set forth below, compel the conclusion that Hayworth was responsible for this."

In order to prevail under the terms of the policy, defendant must prove his claim by a preponderance of the evidence. *See generally, Savannah Wholesale Co. v. Continental Casualty Co.,* 279 F.2d 706 (5th Cir.1960). More specifically, to make the requisite showing of fraud to recover under the policy in this case, defendant must be able to present circumstances which conclude in no other reasonable hypothesis than guilt. *See, General American Life Insurance Co. v. Cole,* 195 F.Supp. 867 (E.D.Mo.1961); *Lumbermen's Mutual Casualty Co. v. Norris Grain Co.,* 343 F.2d 670 (8th Cir.1965); *Savannah Wholesale Co. v. Continental Casualty Co., supra.*

As stated in *General American Life Insurance Co., supra,* at 878:

" 'Fraud may not be proved by building inference on inference.' And circumstantial evidence, to be relied upon, must present circumstances consistent with each other and with guilt and inconsistent with any other reasonable hypothesis. *Gurera v. United States,* 8 Cir., 40 F.2d 338, 340; *State v. Clark,* Mo., 277 S.W.2d 593, 595."

After reviewing the evidence which Southern Utilities would submit at trial, this court finds as a matter of law that the evidence revealing excessive costs, even coupled with evidence that Hayworth had records destroyed and left Southern Utilities without notice does not establish guilt to the exclusion of other reasonable hypotheses. For example, Hayworth may have over estimated costs which could account for his protectiveness of certain records and hasty departure. This and many other reasonable explanations accounting for the loss in this case can be inferred from the evidence intended to be presented at trial.[3]

Fidelity and Deposit Company also urges that Southern Utilities' claim is barred by an exclusion of the policy which provides as follows:

"(b) under Insuring Agreement I, to loss, or to that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation; provided, however, that this paragraph shall not apply to loss of Money, Securities or other property which the Insured can prove, through evidence wholly apart from such computations, is sustained by the Insured through any fraudulent or dishonest act or acts committed by any one or more of the Employees; . . ." Exclusions, Section 2(b) (*See* Appendix).

Fidelity and Deposit Company asserts that where such an exclusion exists, a claimant who seeks to prove a loss by an inventory or profit/loss computation must also present independent proof of loss. Fidelity and Deposit Company urges that Southern Utilities' case is predicated on a contention that there was a materials cost overrun on the project and that the only method used by Southern Utilities to explain such overrun is computing the cost of the materials incorporated into the project as compared with what was paid for the materials.

---

**3.** Other explanations for the loss which may be inferred from the evidence were stated in plaintiff's narrative of fact as follows: material price increases after preparation of the estimate and prior to purchase; the performance of extra work not called for in the original electrical subcontract; incomplete plans and specifications from which Hayworth's original estimate was made; work damaged after installation which had to be replaced; work improperly installed which had to be redone; negligent and careless management by Hayworth and/or others; theft of materials by employees of the general contractor or other subcontractors; theft of materials by third persons not associated with the project (The evidence reveals that materials were not kept under lock and key); theft or misappropriation by suppliers; theft by a Southern Utilities employee other than Hayworth; billing or invoicing mistakes by suppliers; clerical mistakes and improper payment of invoices; a combination of any of the above.

More specifically, Southern Utilities would expect the evidence to show that certain files are usually kept in the office of the project supervisor at the job site; that these files would include copies of the delivery tickets and various other documents including plans, specifications, and work orders; that in the normal course of events these files would be sent to the home office upon completion of the project; and that in this case the file cabinets were returned but were substantially empty because John Hayworth had the job files concerning the job project involved in this case destroyed. Southern Utilities would seek to prove the loss in this case by producing purchase orders, invoices and monthly statements from suppliers as well as cancelled checks assembled by Southern Utilities. Even though there is evidence that Hayworth was protective of the files concerning the project and left upon being questioned about the missing files, Southern Utilities would seek primarily to prove its loss by production of the above-stated records. The court finds that although such records could be used as the only available means to prove the loss, there are insufficient independent facts or circumstances which show that the loss was caused by employee dishonesty; therefore, Southern Utilities is precluded from using such means of proof in light of the above-described exclusion. *See, Meyer Jewelry Co. v. General Insurance Co. of America,* 422 S.W.2d 617 (Mo.1968).[4, 5]

In sum, the court finds that Southern Utilities has failed to provide this court with evidence which if presented to a jury could show (1) that the only reasonable hypothesis which may be drawn from the evidence is that the loss was caused by employee-dishonesty, and (2) that sufficient independent facts or circumstances showing that the loss occurred from employee-dishonesty exist which merit allowing defendant to prove its loss by an inventory or profit/loss computation in light of the exclusion in the policy. Therefore, the court finds a verdict should be and is hereby directed[6] for plaintiff Fidelity Deposit Company of Maryland.

---

**4.** As previously stated by the court, the insurance policy involved in this case was issued to Contrech, Inc. in Missouri and listed as one of its insureds Southern Utilities. The court looks to Missouri law in interpreting the effect of the exclusion discussed above. *Avemco Insurance Co. v. Rollins,* 380 F.Supp. 869 (N.D.Ga.1974) at 872 provides as follows:

"In diversity actions, the substantive legal issues must be resolved by the forum state's conflict of law rules. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Maryland Casualty Co. v. Williams,* 377 F.2d 389 (5th Cir.1967). Under the Georgia choice of law rule, the validity, form and effect of insurance contracts are governed by the laws of the place where they are made under the principle of lex loci contractus. *John Hancock Mutual Life Insurance Co. v. Yates,* 50 Ga.App. 713, 179 S.E. 239 (1934), aff'd 182 Ga. 213, 185 S.E. 268, rev'd on other grounds 299 U.S. 178, 57 S.Ct. 129, 81 L.Ed. 106; cf. *Massachusetts Benefit Life Association v. Robinson,* 104 Ga. 256, 30 S.E. 918 (1898).

The law of this state provides that insurance contracts are considered made at the place where the contract was delivered. *Iowa State Travelers Mutual Association v. Cadwell,* 113 Ga.App. 128, 147 S.E.2d 461 (1966); *Pink v. AAA Highway Express, Inc.,* 191 Ga. 502, 13 S.E.2d 337 (1941), aff'd 314 U.S. 201, 62 S.Ct. 241, 86 L.Ed. 152."

**5.** Southern Utilities states that the excess materials consisted mainly of wire and conduit. (Plaintiff's Narrative of Fact, pg. 24). Such materials are "raw materials, work in progress or materials used or consumed in a business," and, as such, constitute inventory. *Chenoweth Chapman Corp. v. American Insurance Co.,* 553 S.W.2d 872, 876 (Mo.App.1977), *quoting* § 400.9 109 RSMo.1969, the Uniform Commercial Code.

**6.** The direction of a verdict makes it unnecessary to consider the issues of bad faith and recovery of overhead and profit as permissible damages.