Arnold QUINTERO, Appellant,

v.

CITIZENS AND SOUTHERN FACTORS, INC., Meinhard-Commercial Corporation, and Rawleigh, Moses & Company, Inc., Appellees.

No. 17568.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 28, 1980.

Stuart Haynsworth, Houston, for appellant.

Lapin, Totz & Mayer, William A. Petersen, Jr., Houston, for appellees.

Before PEDEN, EVANS and WARREN, JJ.

EVANS, Justice.

This is an appeal from judgments entered in three separate actions on sworn account which were consolidated for purposes of trial. The plaintiffs in each action were creditors of one of the defendants, Fred Guzman, allegedly doing business as Texas Furniture Unclaimed Freight. The other defendants were two brothers, Arnold and Fred Quintero. Based on jury findings that the debts were due and that a partnership existed between Guzman and the Quintero brothers, the trial court entered a judgment

in each of the three cases, awarding the plaintiffs money damages and attorney's fees against all three defendants.

■ Arnold Quintero has alone perfected an appeal. During the pending of this appeal, an amended appeal bond has been filed with this court, showing the name of Fred Quintero as an additional principal appellant, but the amended bond was not filed until after time had expired for perfection of an appeal. Therefore, this court lacks jurisdiction over the attempted appeal of Fred Quintero, and the appeal will be considered only as to the defendant Arnold Quintero.

■ In his first four points of error Arnold Quintero complains that the trial court erred in overruling his motion for judgment *non obstante veredicto*, challenging the legal sufficiency of the evidence to support the jury's finding that Fred Guzman was not acting as sole proprietor of Texas Furniture Unclaimed Freight and that the Quinteros were partners in and owners of the business at the time the debts were incurred. The record before this court does not reflect that Quintero's motion for judgment *non obstante veredicto* was presented to and ruled upon by the court, and under this state of the record, there is no action of the trial court before this court for review. *Home Ins. Co. of New York v. Dacus*, 239 S.W.2d 182 (Tex.Civ.App.—Texarkana 1951, no writ); *Commercial Standard Insurance Company v. Southern Farm Bureau Casualty Insurance Company*, 509 S.W.2d 387 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.).

However, even if it be assumed that the trial court considered and overruled Quintero's motion for judgment *non obstante veredicto*, these points must be denied because there is legally sufficient evidence to support the jury's verdict.

In 1973 Fred Guzman, a salesman for a retail furniture company going out of business, was contacted by Arnold and Fred Quintero with respect to the operation of a retail furniture store under a new arrangement. As a result of negotiations between these parties, Guzman obtained a new lease on the retail furniture store premises, and a "Factoring and Security Interest Agreement" was executed by Fred Guzman and Fred Quintero. Under this agreement Guzman was to operate Texas Furniture Unclaimed Freight and Fred Quintero was to assist in financing inventory purchased from designated wholesale companies. The agreement specified that Quintero's role would be in the nature of a "factor" and that he would be secured by appropriate liens against all of the inventory. Quintero was to have free access to the business premises, including the right to inspect all records, and was to be furnished with periodic accountings. The agreement further stipulated that Quintero was to receive 4% of the "net sales of this enterprize," payable on a monthly basis, and 1% of the invoice value of all merchandise not paid for by Guzman within thirty days of billing. It was also specified that the agreement would continue in effect until mutually terminated, and if terminated within the first year of operation, Guzman was to pay Quintero $5,000; if during the second year of operation an additional $5,000, and so on until a limit of $25,000 had been reached. The agreement stipulated the parties intended to create a security interest "in the merchandise advanced or paid for" by Quintero and supplied by Guzman. Upon termination, Quintero was to have immediate right to possession or full payment for all merchandise advanced or paid for "by him," under the agreement. A security statement was filed by Fred Quintero with the Secretary of State, reflecting a lien on the furniture inventory of Texas Furniture Unclaimed Freight, and this statement was on file when the sales in question were made.

Soon after starting up this new business, Fred Guzman began to handle merchandise furnished by suppliers other than Quintero, and in the months of April, May and June 1974, the plaintiffs or their assignors sold merchandise to the business on open account. In June and July 1974 the business began to have cash flow problems and Arnold Quintero started shipping large,

unordered quantities of furniture to Guzman. On Guzman's questioning as to the purpose of these shipments, he was advised by Quintero that this was being done in order to increase sales through the expansion of their volume of inventory. However, the volume of sales did not substantially increase, and the business continued to face severe financial problems. In September 1974 Arnold Quintero went to the store and advised Guzman that they were going to incorporate and that Guzman would have to sign incorporation papers. Under the purposed incorporation arrangement, Quintero was not going to pay anything for the assets of the store, but he would own one hundred percent of the stock of the corporation. Although Guzman signed the papers, the incorporation was never effected.

In October 1974 Guzman found out that the owners of the building premises were selling the property and that it would be impossible for him to get an extension of the lease. When he advised Arnold Quintero of this circumstance, Quintero told him: "I am foreclosing on you." Arnold Quintero then took possession of all furniture in the store and all accounts receivable, applying the value thereof as a credit against the amounts owed by Guzman under the agreement. No further business was thereafter conducted by Guzman.

The jury failed to find that Guzman had conducted the business as a sole proprietorship or as the Quinteros' agent or employee. It did find that both Fred and Arnold Quintero were partners in and owners of the business at all material times.

█ In determining whether there is legally sufficient evidence to support the jury's findings, this court must consider only the evidence and inferences therefrom which tend to support such findings and must disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). If there is any probative evidence which supports the jury's findings, the points of error must be overruled.

Guzman testified that he had invested about $6,000 in the business and had spent many hours of his own labor in the endeavor. Arnold Quintero had invested money in the financing of the business inventory and had used his skill, knowledge and experience in the furniture business to assist Guzman in making the venture a profitable operation. Quintero advised Guzman what, when, how much and from whom he should purchase goods not supplied by Quintero, and under the terms of their arrangement, Quintero was to receive four percent of the net sales price of *all* merchandise sold through the business, not just a percentage of the merchandise which he, Quintero, supplied. The parties also agreed that if Guzman decided to terminate the agreement, he had to make a substantial payment of money to Quintero, the amount of such payment being determined by the length of time the business had been in operation.

The jury was instructed that the term "partnership" as used in the special issues, meant:

"A combination of two or more parties of their capital, labor or skill for the purpose of a business of the parties for their common benefit. The intention to form a partnership may be expressed or implied from the circumstances surrounding the particular transaction."

█ Quintero did not object to this definition and any complaint with respect to the form of the instruction must be deemed waived. *Yellow Cab and Baggage Company v. Green*, 154 Tex. 330, 277 S.W.2d 92 (1955); Rule 274, Tex.R.Civ.P. The jury could have concluded from all the circumstances surrounding the transaction that Guzman and the Quinteros had intended to form a partnership and, in furtherance of that purpose, had combined their capital, labor or skill for the purpose of establishing a business to their common benefit.

In his points of error six through eight, Quintero complains of the trial court's action in rendering judgment based upon the jury's findings that he and his brother, Fred Quintero, were partners and co-owners with Fred Guzman in the retail furniture busi-

ness. These points of error, complaining that the trial court erred in rendering judgment on the verdict because of the state of the evidence, must be considered "no evidence" points. *Chemical Cleaning, Inc. v. Chemical Cleaning & Equipment Service, Inc.*, 462 S.W.2d 276 (Tex.1970). For the reasons stated with respect to the first four points of error, these points will be overruled.

■ In his ninth point of error Quintero contends that the trial court erred in admitting parol evidence of the alleged partnership because such evidence contradicted and varied the terms of the written "Factoring and Security Interest Agreement." Neither the plaintiffs nor defendant, Arnold Quintero were parties to the written agreement, and under the circumstances of this case, parol evidence was admissible on behalf of the plaintiffs to show that a partnership existed between Guzman and the Quintero brothers. *Williford Lumber Co. v. Malakoff Brick Co.*, 113 S.W.2d 248 (Tex. Civ.App.—Dallas 1938, writ dism'd); McCormick and Ray, Texas Law of Evidence, Vol. 2, § 1621, p. 474 (2nd ed. 1956). Furthermore, Quintero's brief does not point out the specific parol testimony complained of nor does it show that any objection thereto was brought to the attention of the trial court. Rule 418(e) Tex.R.Civ.P.

■ In his tenth point of error Quintero contends that the trial court erred in admitting, over objection, evidence concerning the parties, negotiations with respect to the proposed incorporation. Under this point he argues that the testimony indicating the parties' intent to incorporate improperly influenced the jury to believe that the parties owned some existing interest in the business.

The testimony regarding the negotiations to incorporate was adduced through a witness called by the defendant, Fred Guzman, whose counsel stated that such evidence was being offered for the purpose of showing the degree of control which the Quinteros had over Mr. Guzman and to prove that he acted only as an agent and not as an owner of the business. The record reflects that other testimony regarding the proposed incorporation was admitted in evidence without objection throughout the trial, and the error complained of, if any, must, therefore, be deemed waived. Rule 418(e), Tex.R.Civ.P.; *City of Rockwall v. Mitchell*, 497 S.W.2d 378 (Tex.Civ.App.—Waco 1973, writ ref. n. r. e.).

In his eleventh point of error Quintero contends that the trial court erred in making a comment on the evidence which, in effect, instructed the jury that Arnold Quintero was a partner with Fred Guzman. The trial court's remark in question is reflected by emphasis in the following excerpt from the testimony of Arnold Quintero:

Q. Was Mr. Guzman ever an employee of yours or any business that you had ownership in?

A. No, sir. He was strictly a Texas Giant man, and then he was in business for himself.

Q. Was Mr. Guzman, as you understand it, a partner of yours?

A. No, sir.

Q. Do you know what a partnership is?

A. Definitely.

Q. Would you tell the jury what you think a partnership is?

MR. PETERSEN: Objection to that, Your Honor. That is a matter of law. The Court will instruct the jury what the law is and not what this man thinks.

MR. HAYNSWORTH: Your Honor, the Plaintiff has alleged that Mr. Quintero was engaged in a partnership agreement with Mr. Guzman. Now, if they know what a partnership is, I would like to know if Mr. Quintero was in such a relation.

MR. PETERSEN: Your Honor, we pled that by his acts and his conduct he was a partner. There is no declared partnership. We will agree to that, but by his acts and conduct, he was a partner in this operation.

THE COURT: Overrule the objection. *This man knows what a corporation is, and a sole proprietorship, and he knows*

*what a partnership is and that is how he has been operating.* I am going to let him answer the question. He has testified to all three factors since he has been on the stand.

Q. (By Mr. Haynsworth) Would you tell the jury what you think a partnership operation would have been?

A. Yes, sir. In order to have a true partnership, you have to have articles of partnership. They have to be filed, where the liability of each partner—

MR. HAYNSWORTH: Let me interrupt you just a minute. Everybody has admitted that you did not have articles of partnership, but you can still have a partnership that you hold yourself out as a partner. Explain your relationship with Mr. Guzman and tell the jury if this was a partnership.

THE WITNESS: My relationship with Mr. Guzman is a thing that I have relationships with others. I am an investor, and I am Vice Chairman of the American National Bank. I invest money with people. I help people set up businesses, and never would I ever go into partnership with anyone. Partnership gives you a completer exposure to liability of the man's obligations, and I am too smart to get into these kind of operations.

Q. (By Mr. Haynsworth) Well, if you had a partnership with Mr. Guzman, his financial obligations could conceivably be yours?

A. That is correct. And my net worth prohibits me from getting involved with anyone in a partnership.

Q. Now, don't tell the jury you are wealthy.

A. Well, for me to go into a partnership, I would have to lose my complete thinking, in other words.

Q. In other words, you, when you entered into this agreement, with Mr. Guzman, it would not have been conceivable for you to enter into anything that would amount to a partnership?

A. That is correct. There was no intent. I never intended that.

Q. Would you consider that Mr. Guzman could have been agent of yours?

A. No, sir.

Q. Do you understand what an agent is?

A. That is correct.

The trial court's statement that Mr. Guzman knew "what a partnership is and that is how he has been operating" was clearly improper when considered alone as a comment on the state of the evidence. However, in the context of the proceedings at the time the statement was made, it appears rather obvious that the trial court was merely stating his understanding of Mr. Quintero's prior testimony, indicating by his remark that Mr. Quintero had shown sufficient basis for stating his conclusion regarding whether Guzman's business was a corporation, a sole proprietorship, or a partnership.

■■ An objection to a comment by the trial judge on the weight of the evidence must generally be made at the time of the occurrence if the error is to be preserved for appellate review, unless the comment is of such a nature that it could not be rendered harmless by proper instruction. *State v. A. E. Wilemon,* 393 S.W.2d 816 (Tex.1965). If the matter in question had been called to the attention of the trial judge, he could have clarified the purport of his comment by explaining his remark to the jury or he could have given an appropriate instruction to the jury that it should completely disregard his remark. Since no objection was made, the error complained of must be deemed waived. *Texas Employers' Insurance Association v. Garza,* 557 S.W.2d 843 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.); *Short v. Short,* 468 S.W.2d 164 (Tex.Civ.App.—Tyler 1971, writ ref'd. n. r. e.).

The trial court's judgments are affirmed.