720 F.2d 885
 37 UCC Rep.Serv. 1210
 UNITED STATES of America, Plaintiff-Appellee,
v.
VAHLCO CORPORATION, et al., A Texas Corporation, Defendants,
Magnum Machine and Tool Corporation, a Texas Corporation,
and Vahlco Corporation, a Texas Corporation,
Defendants-Appellants.
 No. 82-1511.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 9, 1983.
 
 Van Kleef & Robbins, William R. Wepfer, Harlingen, Tex., for Vahlco Corp., etc.
 Nicholas V. Hile, Brownsville, Tex., for Magnum, et al.
 J. Christopher Kohn, James J. Brown, Deputy Chief, Enforcement Unit, Civ. Div., Linwood C. Wright, Jr., Dept. of Justice, Washington, D.C., for plaintiff-appellee.
 Appeals from the United States District Court for the Western District of Texas.
 Before GEE, GOLDBERG and TATE, Circuit Judges.
 GEE, Circuit Judge:
 
 
 1
 In 1973, appellant Vahlco Corp. (Vahlco) opened a line of credit with the First National Bank of Seguin (the Bank) in the amount of $350,000. This loan was 90% guaranteed by the Small Business Administration (SBA) pursuant to the Small Business Act, 15 U.S.C. Sec. 631 et seq. As is customary in such transactions, the extension of the major line of credit was preceded by a small "start-up" loan (here, $10,000) secured by assets of much greater value (here, Vahlco's business premises) which were made security for the major loan by a future advances clause in the security instrument. Here, the deed of trust executed with the $10,000 loan contained a dragnet clause effectively rendering the property security for the line of credit to be opened. When Vahlco defaulted on both notes, the Bank assigned its interest to the SBA, which is now attempting to collect the security pledged.
 
 
 2
 On this appeal, Vahlco and its successor in interest Magnum Machine and Tool Corporation (Magnum) attempt to prevent the SBA from foreclosing on the property. We find none of the reasons they advance persuasive and affirm the district court's directed verdict for the SBA.
 
 I. The Transaction(s) at Issue
 
 3
 In August 1973, appellant Vahlco Corporation borrowed $10,000 from the Bank. To secure the loan, Vahlco executed a deed of trust in favor of the Bank. The deed covered land in Guadalupe County, Texas, on which Vahlco's business premises were located. The deed also contained a future advances clause stating that this property would secure future advances to Vahlco from the Bank.[1]
 
 
 4
 In December 1973, Vahlco executed a second note for a $350,000 line of credit with the Bank to finance a construction project. The SBA guaranteed 90% of this loan; further security was provided by the assignment to the Bank of contract proceeds on jobs performed by Vahlco and Vahlco's accounts receivable.[2]
 
 
 5
 During 1974 and most of 1975, Vahlco was engaged in a substantial construction project in Houston, Texas. The Bank routinely applied Vahlco's contract proceeds to its debt, extending additional credit to Vahlco up to the $350,000 line of credit. Thus, for almost two years,[3] Vahlco and the Bank engaged in a rolling loan transaction secured by the $350,000 note and approved by the SBA.
 
 
 6
 In November of 1974, Vahlco sold to Magnum the property secured by the deed of trust and future advance clause of Vahlco's $10,000 note to the Bank. Magnum purchased the property subject to the existing indebtedness. John Osborn, acting as an officer of both Vahlco and Magnum, completed the transaction.
 
 
 7
 By early 1976, Vahlco's Houston construction project had become mired in litigation due to structural failures. Unable to meet its obligation to the Bank on the $10,000 note and on the $350,000 line of credit, Vahlco defaulted on both. In an attempt to clear the lien created by the deed of trust on the property now owned by Magnum, Magnum tendered to the Bank the outstanding balance on the $10,000 note ($5,368.33), demanding that the Bank withdraw a posting on the Guadalupe property used as collateral by Vahlco for the $10,000 note. The Bank accepted the payment, applying it to the interest due and owing on the two notes of Vahlco then in default, but neither retired the $10,000 note nor released the deed of trust.
 
 
 8
 On that same date, the SBA purchased from the Bank the defaulted $350,000 note pursuant to the guaranty agreement between the SBA and the Bank, and the Bank assigned the $350,000 note to the SBA. Approximately six weeks later the Bank assigned to SBA the Bank's interest in the $10,000 note and the deed of trust executed by Vahlco. The SBA subsequently sued Vahlco and several guarantors[4] for the balance of both notes and sought a foreclosure sale of the real estate.
 
 
 9
 A jury trial in the case began in March 1982. At the close of the SBA's evidence, the trial judge granted its motion for a directed verdict. The court found Texas law applicable to the contract issues[5] and concluded as a matter of Texas law that neither Vahlco nor Magnum could establish any contractual defense. Accordingly, the court entered judgment against them and ordered a foreclosure sale of Magnum's real estate.
 
 II. The Timing of the Directed Verdict
 
 10
 Vahlco and Magnum contend as an initial matter that the district court erred by granting the SBA's motion for a directed verdict pursuant to Fed.R.Civ.Proc. 50(a) at the close of the SBA's case, following on its pre-trial determination that Vahlco's and Magnum's defenses were inadequate as a matter of law.
 
 
 11
 The standard for reviewing directed verdicts is the same on appeal as in the trial court. A directed verdict should be granted only where, when the facts and inferences are viewed in the light most favorable to the opposing party,
 
 
 12
 "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, ..."
 
 
 13
 Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir.1969) (en banc); accord Maxey v. Freightliner Corp., 665 F.2d 1367, 1371 (5th Cir.1982) (en banc). We do not quarrel with the district court's determination; indeed, as we explain more fully below, we too conclude that the jury could not reasonably have found in favor of Vahlco or Magnum. We do not, however, much approve of the irregular procedure that the trial court followed in granting a directed verdict before the nonmoving party had a chance to put in evidence.
 
 
 14
 Rule 50(a) speaks of a motion for directed verdict "at the close of the evidence offered by an opponent." This Rule "expresses the general law that after a party has rested, the case may be decided against it on the basis of the evidence the party itself introduced." Gonzalez v. LaConcorde Compagnie D'Assurances, 601 F.2d 606, 608 (1st Cir.1979). However, it is within the power of the trial court to direct a verdict at any point in the trial where it is apparent that there is a complete absence of any question to send to the jury. Best v. District of Columbia, 291 U.S. 411, 415, 54 S.Ct. 487, 489, 78 L.Ed. 882 (1933) ("There is no question as to the power of the trial court to direct a verdict for the defendant upon the opening statement of plaintiff's counsel where that statement establishes that the plaintiff has no right to recover.") Federal courts have exercised this power to grant directed verdicts for the defendant at the close of plaintiff's opening statement, see Best, 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882; Oliver v. Southern Railway Co., 475 F.2d 895 (D.C.Cir.1972); Morgan v. Koch, 419 F.2d 993 (7th Cir.1969); and, on rare occasions, to grant directed verdicts for the plaintiff at the close of defendant's opening statement, see Gundersheimer's, Inc. v. Bakery, etc., Union, 119 F.2d 205 (D.C.Cir.1941); Houk Mfs. Co. v. Cowen Co., 467 Fed. 787 (2d Cir.1920), cert. denied, 254 U.S. 637, 41 S.Ct. 9, 65 L.Ed. 450 (1920); Franklin v. Matoa Gold Min. Co., 158 Fed. 941 (8th Cir.1907). See also Gonzalez, 601 F.2d at 609 n. 4 ("A directed verdict might be proper at the close of plaintiff's case if defendant rests without putting in evidence or if defendant's tendered evidence is rejected as legally inadmissible or the like...."). The existence and scope of this power comports with the purpose of the directed verdict "to save [the] time and trouble involved in lengthy jury determination." Rutherford v. Central Illinois R.R., 278 F.2d 310, 312 (5th Cir.), cert. denied, 364 U.S. 922, 81 S.Ct. 288, 5 L.Ed.2d 261 (1960).
 
 
 15
 This power must nonetheless be exercised with great restraint in order to avoid the possibility that a party will be precluded from presenting facts which make out a question for the jury. Where there is any doubt at all as to the propriety of a directed verdict, district courts should not jump the gun but should wait until both sides have presented their evidence before ruling on motions for directed verdict. See generally C. Wright and A. Miller, Federal Practice and Procedure: Civil Sec. 2533 (1971) (better practice to defer ruling on motion for directed verdict until both sides have rested).
 
 
 16
 In the instant case, however, the district court's action does not constitute reversible error. On appeal, Vahlco and Magnum assert only that the granting of the directed verdict prevented them from tendering evidence on their asserted contractual defenses. Therefore, if the district court was correct in its pre-trial determination that these defenses were defective as a matter of law, Vahlco and Magnum were not prejudiced by the grant of the directed verdict before they could present evidence.[6] Whether the district court's grant of the directed verdict constituted reversible error thus turns on whether each of appellants' defenses is deficient as a matter of law. Since, for reasons stated below, we conclude that each defense is so deficient, we do not find reversible error in the timing of the directed verdict.
 
 III. Vahlco's Defenses
 
 17
 Vahlco's sole defense is that the SBA unjustifiably impaired loan collateral, and that to the extent that the SBA did so, Vahlco is discharged from its obligations under the note by Tex.Bus. & Comm.Code Sec. 3.606 (Vernon 1968).[7] However, the collateral impairment defense under Sec. 3.606 is available only to parties who are in the position of a surety with respect to the instrument. See U.C.C. Sec. 3-606, comment 1. Both the Texas courts and this Court have held the defense unavailable to the maker of a note. Hooper v. Ryan, 581 S.W.2d 237, 238-39 (Tex.Civ.App.1979); United States v. Unum, Inc., 658 F.2d 300, 304-05 (5th Cir.1981) (applying Texas law).[8] Since Vahlco's sole defense is inadequate as a matter of law, the trial court did not err in preventing Vahlco from presenting evidence on this issue.[9]
 
 IV. Magnum's Defense
 
 18
 Magnum argues that it would have presented evidence going to two contractual defenses: (1) that the future advances clause in the deed of trust executed at the time of the $10,000 loan does not render the real estate security for the $350,000 line of credit, and (2) even if the future advances clause does make the land security for the line of credit, misrepresentations by SBA officials estop the SBA from relying on any such lien.
 
 
 19
 A. The Effect of the Future Advances Clause.
 
 
 20
 Magnum argues that it would have put forward several "defenses"--all of which are variants on a single theme: whether the future advances clause renders Magnum's real estate security for the SBA-guaranteed line of credit. Specifically, Magnum asserts that Magnum fully paid the amount of the first note, that the Bank did not validly assign the first note and the lien on real estate to the SBA, that the $350,000 line of credit constituted a contractual modification of the $10,000 note, and that the parties to the $10,000 note did not contemplate the SBA-guaranteed line of credit at the time that they entered into the $10,000 loan agreement and therefore that the future advances clause in the deed executed at that time is of no effect with regard to the line of credit.
 
 
 21
 A moment's reflection reveals that all these arguments depend on the outcome of the last: if the lien resulting from the deed of trust secured the second note, payment of the first note would not have discharged the lien; if the lien secured the second note, the assignment of the first note and the deed of trust was proper because the security would follow the debt under Texas law, see, e.g., Lawson v. Gibbs, 591 S.W.2d 292, 294 (Tex.Civ.App.1979); if, on the face of the loan documents (including the second note), the court properly found that the first lien secured the line of credit, Magnum could scarcely prove by evidence of negotiations carried on between the signing of the first and second notes that the second note modified the first.[10] We turn, therefore, to the determinative question: does the future advances clause in the deed of trust, construed with the second note, render the real estate security for the second note?
 
 
 22
 In determining what the parties contemplated, and thus what the effect of the future advances clause would be, the district court looked exclusively to the language of the agreements and declined, on the grounds that the instruments were unambiguous, to consider evidence of the subjective intent of the parties. This approach is as correct under Texas law as it is under general principles of contract law. Although evidence of the subjective intentions of the parties may be admitted to explain a contract that is susceptible to more than one reasonable interpretation, Watkins v. Petro-Search, Inc., 689 F.2d 537, 541 (5th Cir.1982), the Texas parol evidence rule--a rule of substantive law and not merely of evidence--bars resort to evidence of the intent of the parties where the language of the agreement is clear.[11] Id. at 538; Sun Oil v. Madeley, 626 S.W.2d 726, at 727-28, 731 (Tex.1981); R & P Enterprises v. La Guarta, Gavrel & Kirk, Inc., 596 S.W.2d 517, 519 (Tex.1980). Kimbell Foods, Inc. v. Republic National Bank, 557 F.2d 491, 496 (5th Cir.1977), aff'd 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). The language of the contract provides the clearest indication of the intent of the parties absent an ambiguity in that language. Whether the contract language is ambiguous is a question of law. See Watkins v. Petro-Search, Inc., 689 F.2d at 538 (applying Texas law).
 
 
 23
 The two clauses, the first in the deed of trust[12] and the second in the SBA-guaranteed note,[13] bear only one reading. The future advances clause on its face applies to any future advance from the Bank to Vahlco; the SBA-guaranteed note is such an advance. The future advances clause stipulates expressly that any additional security given for future loans shall not alter the lien arising from the deed of trust. The SBA-guaranteed note expressly provides that security for that loan is not limited to the retainage accounts, the inventory and the SBA guarantee. The trial court therefore correctly excluded evidence of the subjection intention of the parties.[14] See also Kimbell Foods, 557 F.2d at 495 (as a matter of law, subsequent extension of credit by the same lender is "reasonably within the contemplation of the parties to the mortgage at the time it was made").
 
 
 24
 In its reply brief, Magnum asserts (for the first time) that the parol evidence rule does not apply because the parol evidence rule does not bind strangers to a contract, Quintero v. Citizens and Southern Factors, 596 S.W.2d 277, 280 (Tex.Civ.App.1980), and Magnum was not a party to the original note or deed of trust. However, as Vahlco's successor in title to the property covered by the deed of trust,[15] Magnum is so closely affiliated with Vahlco it may not be deemed a "stranger" to the contract, Peters v. Lerew, 139 S.W.2d 321, 327 (Tex.Civ.App.1940), error dismissed; see Ragland v. Curtis Mathes Sales Co., 446 S.W.2d 577, 578 (Tex.Civ.App.1969) (person who is alter ego of party, beneficiary of contract or in privity with party is not a stranger to the contract).[16]
 
 
 25
 Since we find that the trial court was correct in determining that the lien created by deed of trust secured the line of credit as a matter of law, we conclude that Magnum's asserted defense of payment, contractual modification, invalid assignment and inapplicability of the lien to the second loan were insufficient as a matter of law, and the trial court did not err in excluding evidence on these issues.
 
 B. Estoppel of the SBA
 
 26
 Magnum also argues that it would have offered evidence supporting an estoppel defense based on misrepresentations by SBA officers. Before the parties entered the transaction, an SBA Loan Officer allegedly told Vahlco that the SBA would leave Vahlco's "fixed assets" unencumbered.[17] Nevertheless, the SBA sought and obtained an assignment of the first note and the deed of trust after the Bank assigned to the SBA the note it had guaranteed. (At the time, the retainage accounts that had secured the $350,000 note had, in the SBA's opinion, become uncollectible because they were tied up in litigation over Vahlco's failure to complete the Houston construction contracts.)
 
 
 27
 At trial the district court denied this defense as a matter of law, informing counsel for Magnum that he could not raise estoppel against the United States under the facts of the case. However, in its memorandum opinion the trial court rejected the estoppel defense on other grounds: that the defense was available only to a party to the SBA-guaranteed loan and therefore not available to Magnum. We conclude that the district court was correct in its initial reasoning and in its result, but that the grounds articulated in its written opinion are faulty.[18] We therefore affirm on the grounds orally given by the district court at trial--that Magnum may not raise estoppel against the United States on these facts.
 
 
 28
 Decisions of the Supreme Court and of this Court make clear that estoppel can rarely be asserted against the government. See, e.g., Schweiker v. Hansen, 450 U.S. 785, 788-89, 101 S.Ct. 1468, 1470-71, 67 L.Ed.2d 685 (1981) (lack of affirmative misconduct bars asserting estoppel defense against government). In the context of SBA-guaranteed loans, this court has recently held that the United States is not bound by actions of its agents that exceed the scope of their authority--specifically, misrepresentations regarding financial instruments to which the SBA is a party. United States v. R. & D. One Stop Records, 661 F.2d 433 (5th Cir.1981). In R. & D., guarantors of an SBA promissory note argued that the SBA officer had told them that despite the language of the guarantee no individual recourse against the guarantors was envisioned and that the SBA was therefore estopped from collecting on the guarantee. This Court looked to the express language of the guarantee alone to determine the obligations of the guarantors and dismissed the estoppel argument on the grounds that "the possible misrepresentations by the SBA representative are of no help to the guarantors," since any representation that the express language of the instrument would not be determinative of the guarantors' obligations was beyond the scope of the agent's authority. R. & D., 661 F.2d at 434-35, citing, inter alia, Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947).
 
 
 29
 Taking Magnum's assertions as to the SBA officer's statements as true, all that happened here was that the officer, ignorant of the terms of the contract between Vahlco and the Bank, stated that the SBA would not on its own initiative require fixed assets as security to guarantee the line of credit. However, those assets had already been made security for the line of credit by the terms of the written instruments embodying the contract between the Bank and Vahlco. As successor to the Bank's interest in that transaction, the SBA is entitled to the benefit of the terms the Bank negotiated--regardless of whether an SBA officer may have indicated that the SBA might have consented to other terms in some hypothetical transaction where no future advances clause already created a lien on the property.
 
 
 30
 As the district court found, the language of the instruments unambiguously establishes that the property secures the line of credit. The SBA is as much entitled to that security as the Bank was. There was no error in precluding evidence on Magnum's "estoppel defense."
 
 
 31
 Since the defenses on which Vahlco and Magnum sought to offer evidence were as a matter of law not meritorious, defendants' substantial rights were unabridged by any error in prematurely granting a directed verdict. The judgment below is therefore
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 The future advances clause in the deed of trust provided:
 It being contemplated that from time to time Grantor will become further indebted to said bank, this Deed of Trust and the lien created hereby shall secure any and all indebtedness of Grantor to said Bank of every nature whatsoever, whether created heretofore or hereafter, primary or secondary, until such indebtedness are fully paid and until this Deed of Trust is duly released by said Bank, and the mere fact of repayment of all indebtednesses of Grantor shall not terminate this Deed of Trust lien unless the same be so released by said Bank at the request of Grantor, otherwise it shall remain in full force and effect to secure all present and future indebtedness of Grantor to said Bank, however the same shall be evidenced. This Deed of Trust and lien shall not affect or be affected by any additional security that may be taken as to any indebtedness due said Bank by Grantor and shall not be affected by renewals or extensions of all or any part thereof, or by partial releases of any character whatsoever.
 
 
 [2]
 The second note provided in part:
 Payment of this note is secured by all money or other property of the undersigned now or at any time hereafter in the possession of the holder in any capacity and also by: Secured by [sic] Inventory, Retainages-S.B.A. Guarantee.
 
 
 [3]
 The line of credit loan was initially extended to Vahlco for a period of 12 months. However, in mid-1974 Vahlco requested a six-month extension on the line of credit loan which the Bank granted and SBA approved. Three additional extensions were requested, granted and approved, extending the life of the loan to January 15, 1976
 
 
 [4]
 The claims of the United States against two of the guarantors to the $350,000 line of credit were settled in February 1979; the remaining guarantor has not joined this appeal
 
 
 [5]
 Applying the doctrine enunciated in Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), and developed in, inter alia, United States v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 16 L.Ed.2d 404 (1966), and United States v. Kimbell Foods, Inc., 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), the district court found that while federal law governed the suit as one involving the federal government's commercial transactions, Texas law should furnish the content of the federal rule of decision on the contract issues. The court stated at trial that it would apply a uniform federal rule to the issue of estoppel against the government (SBA) raised by Magnum
 
 
 [6]
 Only errors that affect the substantial rights of the parties provide grounds to reverse, Fed.R.Civ.P. 61. Appellants bear the burden of demonstrating interference with their substantial rights. See, e.g., Howard v. Gonzalez, 658 F.2d 352, 357 (5th Cir.1981); see also Cox v. C.H. Masland & Sons, 607 F.2d 138, 145 (5th Cir.1979) (improper denial of jury trial harmless where directed verdict would have been appropriate)
 
 
 [7]
 Texas adopted the Uniform Commercial Code as Title I of its Business and Commerce Code in 1967; Texas' Sec. 3.606 is identical to U.C.C. Sec. 3-606. It reads in relevant part:
 (a) The holder discharges any party to the instrument to the extent that without such party's consent the holder....
 (2) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.
 
 
 [8]
 Restricting the Sec. 3.606 defense to sureties makes good commercial sense, as this Court explained in Unum :
 The maker of a note is always primarily responsible for the debt with no recourse except against co-makers. Sureties, whether accommodation makers or endorsers, are only secondarily liable; they retain a right of recourse against the primary obligor. White & Summers, Uniform Commercial Code Sec. 13-12, at 426 (1972). Fairness dictates that if the risk a surety has agreed to undertake is increased through impairment of the securing collateral by the person to whom payment is due, the surety should be discharged to the extent of the impairment.
 658 F.2d at 304-5.
 
 
 [9]
 We note that there is a serious question whether Vahlco preserved this issue for appeal. Counsel for Vahlco urged the defense to the district court during the trial, but Vahlco did not plead impairment of collateral in its answer or in its trial memorandum. Although Vahlco argued the defense in a brief opposing the SBA's motion for summary judgment, Vahlco did not include the issue in the Agreed Pretrial Order. On similar facts, this Court has found waiver of an affirmative defense. See, e.g., Automated Medical Laboratories v. Armour Pharmaceutical Co., 629 F.2d 1118, 1122-23 (5th Cir.1980) (where statute of frauds defense neither pleaded nor incorporated into a pretrial stipulation of issues, but first raised the issue in a trial memorandum, defense waived). It is not necessary for us to decide this question, however, since, as noted, this defense is unavailable to Vahlco as a maker of the note
 
 
 [10]
 Neither defendant contended at any time that he did not assent to the second note as constituting the complete and accurate integration of the agreement between the parties. Therefore, the court properly excluded as a matter of law any evidence--parol or otherwise--of antecedent understandings or negotiations which defendants sought to admit for the purpose of varying or contradicting the terms of the second note. See A. Corbin, Corbin on Contracts, Sec. 573 (1960)
 
 
 [11]
 The parol evidence rule applies equally to determining the intent of the parties to a future advances clause. Kimbell Foods, Inc. v. Republic National Bank, 557 F.2d at 495-96
 
 
 [12]
 The relevant language is quoted supra at note 1
 
 
 [13]
 The relevant language is quoted supra at note 2
 
 
 [14]
 Magnum cites Airline Commerce Bank v. Commercial Credit Corp., 531 S.W.2d 171 (Tex.Civ.App.1975), for the proposition that the existence of separate security in a later loan is ordinarily a circumstance indicating that the parties do not contemplate that loan. However, the express provision to the contrary in the future advances clause at issue here--unaltered by any subsequent written modification in the second note--negates any such inference. See Sun Oil v. Madeley, 626 S.W.2d at 727-28, 731-2 (circumstances surrounding an agreement may not be admitted to vary or contradict the language of a contract)
 
 
 [15]
 This fact was stipulated
 
 
 [16]
 As with Vahlco's argument, we note, but find it unnecessary to rule on counsel's procedural shortcomings in failing to preserve the issue for our review, since their argument is mistaken as a matter of law
 
 
 [17]
 The SBA was, at the time, unaware of the real estate lien resulting from the first loan. Indeed, the record shows that the SBA was not aware of this lien until 1975
 
 
 [18]
 We take a moment to explain the difficulty with the trial court's reasoning that the defense of estoppel was not available to Magnum as a non-party. Under Texas law--which, as the trial court correctly found, determines Magnum's contractual rights--while a "stranger to the contract" may not employ an estoppel defense, Buckner Orphans' Home v. Berry, 332 S.W.2d 771, 776 (Tex.Civ.App.1960), those in privity with a party to the transaction creating the estoppel may, Swilley v. McCain, 374 S.W.2d 871, 875 (Tex.1964) (judicial estoppel), Berry, 332 S.W.2d at 776. Here, Magnum was stipulated to be Vahlco's successor in title to the real estate, and the corporations shared at least one high level official during the relevant time period. Accordingly, this ground for the court's ruling does not bar the estoppel defense as a matter of law. (Additionally, our determination, supra, that Magnum is not a "stranger to the contract" for the purposes of the parol evidence rule would ill accord with a finding that Magnum is a "stranger to the contract" for the purposes of estoppel.)