## PACIFIC CAN CO. v. HEWES.
### No. 8487.

Circuit Court of Appeals, Ninth Circuit.
March 2, 1938.

Charles R. Denney, of Everett, Wash., and Frank P. Helsell, of Seattle, Wash. (Hulbert, Helsell & Bettens, of Seattle, Wash., of counsel), for appellant.

D. G. Eggerman and DeWitt Williams, both of Seattle, Wash. (Eggerman & Ros-ling, of Seattle, Wash., of counsel), for appellee.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

From a judgment for $21,523.73, rendered in favor of appellee, in an action brought by him to recover from appellant for fruit delivered by appellee to Cleary Packing Company, appellant has appealed.

The C. & H. Packing Company, Inc., a Washington corporation, engaged in a canning business, became financially involved in 1934, and it was doubtful whether or not it would be able to operate during the 1935 canning season. Appellant, a Nevada corporation, engaged in the business of manufacturing and sale of cans, wrote C. & H. Packing Company, Inc., on April 30, 1935 in part as follows:

"The Pacific Can Company of San Francisco is extending its services into the Northwest * * *

"We have opened temporary offices at 217 Lloyd Building, Seattle, under the direction of Richard J. Gosse, who is Vice President of our company and he will be calling on you shortly.

"Our customers have benefited and profited by our close cooperation for they are dealing directly with our principals and not with absentee ownership * * *"

Thereafter, Cleary Packing Company, Inc., hereinafter called the packing company, was organized under the laws of Washington. The first meeting of the board of directors thereof was held on August 14, 1935. At that time a resolution was adopted authorizing lease of the plant of C. & H. Packing Company, Inc. The minutes also state that appellant was "furnishing the necessary additional capital wherewith to operate during the coming season," and a resolution authorizing entry into an agreement with appellant was adopted.

The packing company leased the plant from C. & H. Packing Company, Inc. It also entered into an agreement with appellant wherein appellant agreed to lend to the packing company an additional 5 per cent. of the selling price of canned goods, after a bank had lent 65 per cent. of such selling price. Both loans were to be secured by warehouse receipts, the lien of the bank to be superior to appellant's lien. Among other provisions, it was provided that ap-

pellant should designate an office manager, and that all money received by the packing company could be paid out only by checks countersigned by such office manager. One Cleary, as third party to the agreement, agreed to pledge all stock, except qualifying shares, he owned in the packing company as additional security for the loans to be made by appellant. In another agreement between the packing company and appellant dated at the same time, it was recited that the packing company had agreed to purchase cans from appellant.

On August 30, 1935, a letter was written to the packing company signed with appellant's name and underneath that name was "Richard J. Gosse." The contents designated one Mony as office manager, and outlined his functions. One paragraph was as follows:

"As soon as there are manufactured goods, he will present warehouse receipts for same to the bank, which will advance 70% of the value as shown by actual sales. 3. These funds so advanced are to be disbursed first as follows: (A) Labor-Funds to be deposited in the bank in a special payroll account for the labor involved in each receipt and to include medical aid and State compensation. (B) Pay for raw material used. (C) Purchase cans for next day's run."

A copy of the letter was sent to the bank, one to appellant, and another copy was sent to appellee, with a letter signed in the same manner indicated above in which it was stated "you will see we are endeavoring to protect your interest as well as our own."

Appellee was engaged in a fresh fruit brokerage business and sold fruit to the packing company in 1935. His first shipment was made on August 23, 1935. Many subsequent shipments were made from that time during the following month. A ten-day sight draft was sent to the bank for each shipment. Some were paid, but a number of drafts totaling $21,523.73 were never paid.

On January 2, 1936, appellee commenced this action in a Washington state court, against appellant to recover the amount of the unpaid drafts. It was removed to the court below on appellant's petition. The complaint alleged that appellee shipped raw fruit upon ten day drafts and "upon [appellant's] oral agreement that [appellant] would cause such drafts to be promptly paid at maturity out of the funds advanced upon the warehouse receipts" and that appellant "would grant and accord plaintiff priority of payment from said advances, inferior only to the actual labor cost involved in the cannery operation." It was also alleged that the "oral contract and agreement of the said Gosse as resident Vice-President of [appellant] was under date of August 30, 1935 confirmed in writing." It was further alleged that Gosse acting in appellant's behalf, after some shipments had been made by appellee, represented that the agreed priority of payment would be complied with, but that appellant violated the agreement and had become unjustly enriched at the expense of appellee in the sum of $41,500, because it "required that the priority of payment * * * be ignored and that [appellant] be paid for the cans * * * in advance of payment" for "such fresh fruit" furnished by appellee.

The complainant also alleged that appellant caused the packing company "to be organized under its supervision" and that the packing company's plant was "operated under the supervision and control of [appellant] during the canning season of 1935"; that appellant "secured and now holds voting control of all the capital stock of the" packing company and "selected and dictated the personnel of the officers and directors" thereof "to conduct the business under the control and dictation of" appellant; that appellant "placed its own nominee in charge as Office Manager under an arrangement that no money could be disbursed from said operation except by such nominee under [appellant's] control and supervision"; and that therefore "the operation of canning fruit in" the packing company's plant "during the season of 1935 * * * has been and is the operation of [appellant] itself."

In its answer, appellant denied most of the allegations of the complaint, and asserted five affirmative defenses: (1) That the oral agreement was within the statute of frauds; (2) that if any such agreement was made by Gosse, he acted without the actual or apparent scope of his authority; (3) that there is a misjoinder of causes of action; (4) that prior to September 25, 1935, appellee discovered that the cans were being paid out of the proceeds of loans; that there were insufficient funds to pay for both the cans and the drafts; that appellee continued to deliver fruit anyway, and that he is estopped to claim dam-

ages; (5) that because of the knowledge of appellee set forth in the fourth affirmative defense, appellee waived any right to recover damages.

The jury returned a verdict for appellee, judgment was entered thereon, and appellant has appealed.

There was oral evidence tending to prove the agreement alleged, to the introduction of which appellant objected and excepted to the action of the court in overruling the objections. The objections were based on the contention that the agreement was within the statute of frauds.

Appellant contends that the agreement alleged in the complaint was a special promise to answer for the debt of the packing company and was void under the statute of frauds because it was not written. Remington Revised Statutes of Washington, § 5825. We believe that the statute has been construed to mean that if a defendant promises to pay a debtor's debt out of the debtor's funds, it is not within the statute. Guth v. First National Bank, 137 Wash. 280, 242 P. 42. Such is the case here, and the construction is controlling. The cases cited by appellant are ones where the promise was to pay out of defendant's funds, not the debtor's, and are not, we believe, in point.

The court instructed the jury with regard to the authority of Gosse, to which appellant excepted, on the ground that the evidence that Gosse acted within the scope of his authority was insufficient to warrant submission of the question to the jury.

The letter of April 30, 1935, stating that appellant's customers were "dealing directly with our principals and not with absentee ownership," the acquiescence in the letter of August 30, 1935, written by Gosse, by appellant, and other evidence indicating that Gosse asserted authority to make the contract was sufficient, we think, to submit the question as to whether Gosse was acting within his real or apparent authority, to the jury.

Appellant excepted to the following instruction given by the court: "If you do not find that the defendant did directly enter into the alleged agreement made by its vice president Gosse, nevertheless if you find from the evidence that the defendant caused the Cleary Packing Company to be organized, and that during the time in which plaintiff furnished fruit to the Cleary Packing Company the defendant controlled its stock and put defendant's appointee, acting under defendant's orders, in charge of the income and disbursements of the packing company and so controlled and dominated the packing company's management that the packing company was an adjunct or instrumentality of the defendant, then you are instructed that the defendant would be responsible for the acts of the Cleary Packing Company and its authorized representatives done in that connection."

Appellant contends that the question submitted to the jury was one of law for the court, and that there was no evidence of such control which would justify submission of the question to the jury.

A familiar principle of law has been that a corporation is an entity, distinct in itself. It is true that when resourcefulness of man caused a corporation to be used as a scapegoat for another, courts checked the evil. A common statement of one of the rules is that the entity will "be disregarded * * * where a corporation is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality or adjunct of another corporation." In re Watertown Paper Co., 2 Cir., 169 F. 252, 256. The rule as stated has been criticized as being inaccurate. In re Kentucky Wagon Mfg. Co., D.C.Ky., 3 F.Supp. 958; Ballantine, Separate Entity of Parent and Subsidiary Corporations, 14 Cal.L.Rev. 12. There is just ground for criticism, not of the result reached, but of the theory upon which the result is obtained.

Some of the early cases, in the situation described in the statement of the rule, based the liability on the principles of agency, e. g., see Glidden & Joy Varnish Co. v. Interstate Nat. Bank, 8 Cir., 69 F. 912; American Nat. Bank v. National Wall-Paper Co., 8 Cir., 77 F. 85. Later, the liability seems to have been based on the theory that the corporate entity was disregarded, e. g., the rule as stated in In re Watertown Paper Co., supra; and see Gillis v. Jenkins Petroleum Process Co., 9 Cir., 84 F.2d 74, 80. Finally, in Berkey v. Third Ave. Ry. Co., 244 N.Y. 84, 155 N.E. 58, 61, 50 A.L.R. 599, following the suggestion of Professor Ballantine, supra, 14 Cal.L.Rev. 12, it was indicated that both theories exist, by the following quotation: " * * * Dominion may be so complete, interference so obtrusive, that by the general rules of agency the parent will be a principal and the

subsidiary an agent. Where control is less than this, we are remitted to the tests of honesty and justice * * *"

We believe the liability in most of such cases is based correctly on the rules of agency. 1 Fletcher, Cyclopedia Corporations, 156 § 43. Cf. Kingston Dry Dock Co. v. Lake Champlain Transp. Co., 2 Cir., 31 F.2d 265, 267. As such it is not a new rule of law, but an old one applied to new situations. Where one corporation is controlled by another, the former acts not for itself but as directed by the latter, the same as an agent, and the principal is liable for the acts of its agent within the scope of the agent's authority.

It may be that there are exceptional cases, as intimated in Berkey v. Third Ave. Ry. Co., supra, where liability may not be fastened on one corporation by principles of agency, and may be imposed only by disregarding the corporate entity—a point we do not decide. Here, the case calls for application of principles of agency, one of which is that agency is a question of fact for the determination of the jury. 3 C.J.S., Agency, 323, § 330.

As to sufficiency of the evidence, the trial court should direct a verdict, if there is no substantial evidence, or if the evidence "is all on one side or so overwhelmingly on one side as to leave no room to doubt what the fact is." Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720. It is held that proof of organization of one corporation by another, or ownership by one corporation of all the capital stock of another, or common officers and directors, is insufficient to show liability. Gillis v. Jenkins Petroleum Process Co., 9 Cir., supra, 84 F.2d 74, 79. We believe that rule to mean that proof of such facts, without more, is not substantial evidence as to the agency relation.

On the other hand, where a determination depends "on the credibility of witnesses, and the effect or weight of evidence," it is to be made by the jury. Gunning v. Cooley, supra, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720. See, also, Best v. Dist. of Columbia, 291 U.S. 411, 415, 54 S.Ct. 487, 489, 78 L.Ed. 882. The rule is stated that if one corporation controls and operates another, the former is liable. Anderson, Limitations of Corporate Entity, 333, § 344. We believe this rule to mean that if such control is shown, then the agency relation is shown. If the evidence of such control is conflicting, it is a question for the jury; if all on one side, or so overwhelmingly on one side, the agency relation cannot be doubted, and the court should direct a verdict.

There was evidence that appellant formulated the program involving the formation of the packing company; that appellant had control of the packing company's stock; that it participated in sales for the packing company; that it controlled the packing company and appointed an office manager. This and other evidence was sufficient to take the case to the jury, as to whether the packing company was acting as appellant's agent.

Appellant requested an instruction to the effect that if the jury found that a time arrived when the packing company could not pay for both the fruit and the cans, and if it found that appellant was under no obligation to furnish cans without payment therefor, and if the packing company had paid for the fruit, but not for the cans, and if the canning operation had ended, then the jury should deduct from the amount of appellee's recovery, the amount of pears on hand which had not been paid for. The instruction was properly denied, because it submitted questions of fact on which there was no evidence. Southern Pac. Co. v. Schwartz, 9 Cir., 89 F.2d 192, 194. It is conceded that the packing company did not pay for the fruit, did pay for the cans, and the canning operation did not end, as described.

Appellant also requested an instruction to the effect that if appellee discovered in the latter part of September, 1935, that appellant was being paid for the cans before payment for the fruit was made, and had acquiesced in such action, then appellee could not recover. The trial court gave the instruction word for word, but added thereto a statement that appellee could not recover "for any losses on shipments after" such discovery. Appellant does not contend that the instruction actually given, was erroneous. Such instruction was correct as given, and the one requested was erroneous for lack of the statement added by the court. The duty resting on appellee to minimize his damages, would not operate until he knew, that he was suffering damages, by breach of the contract by appellant.

The amount of appellee's claim included items for fiber pads and canning

cases. The fruit was shipped in canning cases containing fiber pads. Appellee testified as to the terms of the contract, that "Mr. Gosse's and my understanding was that the raw materials were to mean the fruit and the containers in which it was necessary to ship them, and any cold storage charges or charges incidental to the raw fruit." Appellant requested an instruction that appellee could not recover for the fiber pads and canning cases. In view of appellee's testimony the instruction was properly refused.

Affirmed.

MATHEWS, Circuit Judge, concurs in the result.