McNitt v. BIC Corporation          CV-91-98-B     06/03/93

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

Jonathan R. McNitt
 Kristine McNitt

     v.                                    Civil No. 91-98-B

BIC Corporation


**O R D E R**


In this diversity action, plaintiffs, Jonathan R. McNitt and
Kristine J. McNitt, have brought product liability and negligence
claims against BIC Corporation ("BIC") for injuries Jonathan
McNitt sustained as a result of a fire that occurred on August
25, 1990, while at work for Freudenberg-Nok ("Freudenberg") in
Bristol, New Hampshire.  BIC's motion for summary judgment is
currently before the court.  For reasons which follow, this
motion is denied.


I.  **BACKGROUND**

The facts relevant to the disposition of this motion are set
forth below and are stated in the light most favorable to the
plaintiffs.

On August 25, 1990, Jonathan McNitt, while working at Freudenberg, was instructed by his foreman to fill a spray tank with an adhesive compound known as Chemlok 205. McNitt moved a drum containing the adhesive to a spray booth in which the tank was located, stirred the compound, and attached hoses from a pump to the drum and spray tank. After turning on the pump, McNitt left the spray booth and went to a near by metal stamping room to smoke a cigarette.

In the metal stamping room, McNitt took a cigarette from a pack in his shirt pocket and lit it with a BIC J-6 fixed-flame butane lighter. After placing the lighter back in his shirt pocket, McNitt took a couple puffs from the cigarette, "clipped the head of it," ground it out with his shoe, and returned to the spray booth to make sure that the hoses from the pump were in the proper place. While checking the hoses, McNitt became engulfed in flames.

Soon after the fire began, the sprinkler system in the spray booths released, covering the immediate area with an inch or two of water. After the fire was extinguished, a Freudenberg employee discovered a BIC lighter immersed in the water. The lighter, which had a ruptured body, was eventually turned over to Freudenberg's workmen's compensation carrier and was subsequently

2

given to plaintiffs' expert witness, Dr. John Geremia.

As part of his examination of the lighter, Dr. Geremia performed a spectral analysis to determine the chemical composition of six samples of material he found in the lighter's jet and globe seal area. This test revealed that each sample contained varying amounts of chlorine, aluminum, zinc, and copper.[1] Relying on Dr. Geremia's inspection of the lighter, plaintiffs base their claim, in pertinent part, upon the following theory:

(1) the BIC J-6 fixed flame lighter used by McNitt failed to extinguish after use, igniting flammable vapors released from the Chemlock 205 adhesive McNitt was working with;

(2) the lighter failed to extinguish because of the accumulation of material ("debris") on the globe seal which prevented the seal from cutting off the flow isobutane; and

(3) a design or manufacturing defect allowed the debris to accumulate in the lighter prior to the fire.

BIC admits that there was debris on the globe seal when it was examined after the accident and acknowledges that such debris can cause a lighter to keep burning after its user believes it

---

[1]The valve body of the BIC J-6 fixed flame lighter is made of aluminum and the jet material is made of zinc and copper.

has been extinguished.  BIC, however, argues that the debris entered the lighter after the fire.  In support of this theory, BIC's experts assert the following:

(1)  Dr. Geremia's tests revealed that the debris consisted in part of large quantities of chlorine, which is not a component of the lighter or part of the manufacturing process;

(2)  the compound adhesive, Chemlock 205, which McNitt was working with at the time of the incident, decomposes into chlorine gas and hydrogen chloride gas when exposed to fire;

(3)  these gases, when mixed with water, form hydrochloric acid, which is highly corrosive of the aluminum, zinc, and copper of which the light's jet and valve body are made;

(4)  McNitt's lighter was found after the fire with its body ruptured lying in an inch or two of water containing hydrochloric acid;

(5)  after the lighter was exposed to the resulting hydrochloric acid, the aluminum valve body corroded, causing the debris found by Dr. Geremia; and

(6)  the exposure of similar J-6 fixed flame lighter valve bodies to hydrochloric acid produced the same corrosion and the same type of debris found by Dr. Geremia.

Dr. Geremia rejects BIC's claim that all the debris found in the lighter entered the valve after the fire.  According to Dr. Geremia:

> It is a fact that some material did enter the BIC valve after the fire.  This is obvious from the black carbon like material coated onto the outer surface of the jet.  However,

4

> it is also obvious that debris was present in the lighter before and at the time of the accident. Some of the debris on the globe seal has the appearance of corrosion product as noted by [BIC's expert]. However, much of it does not have that appearance. Consequently, not all of the material can be attributed to corrosion by hydrochloric acid or by any other corrosion process, such as inundation by chlorinated water.

Geremia Aff. ¶ 10 (May 4, 1993). Dr. Geremia also claims that gouge marks found on the surface of the jet suggests that there must have been debris in the valve before and at the time of the accident:

> Although the lighter in question is relatively new and was not used extensively before the fire, gouge marks were found on the surface of the jet. . . . Gouge marks on the surface of the jet are typical of an abrasion process due to foreign particles lodged between the jet's surface and the valve body in which it must move up and down. Such furrows are the result of valve body (aluminum) and jet material (zinc, copper) being shaved off when the jet is lifted or released. The width of such furrows is typically about one-half the size of the nominal space between the jet and valve body. This is a much greater wear pattern than can be accounted for by surface roughness and friction between the two parts.

Id. ¶ 13. BIC's experts disagree.

5

## II. **DISCUSSION**

A. <u>Summary Judgment</u>

### 1. <u>Arguments</u>

Both sides agree that plaintiffs cannot prevail unless they establish that the debris had been deposited on the lighter's globe seal prior to the accident.[2] Since Dr. Geremia's testimony is the only evidence plaintiffs are able to offer on this important issue, BIC seeks summary judgment by attacking the foundation for Dr. Geremia's testimony. BIC also argues that it is entitled to summary judgment because Dr. Geremia was unable to identify the specific design or manufacturing defect that caused the debris to be deposited on the globe seal. I find neither argument persuasive.

### 2. <u>Standard of Review</u>

Summary judgment is appropriate "if the pleadings,

---

[2] Plaintiffs accept BIC's contention that they must establish that debris had been deposited on the globe seal during the manufacturing process in order to prove their defective manufacturing claims. However, they dispute BIC's contention that their defective design claims can only be established if the debris was deposited during the manufacturing process. In ruling on the motion for summary judgment, it is unnecessary for me to resolve this dispute now since I find that a sufficient foundation has been laid for me to consider Dr. Geremia's testimony that the debris was deposited during the manufacturing process.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); accord Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). A "material" issue is one that "affect[s] the outcome of the suit . . . ." Anderson, 477 U.S. at 248. The burden is upon the moving party to establish the lack of a genuine, material factual issue, Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986), and the court must view the record in the light most favorable to the non-movant, according the non-movant all beneficial inferences discernable from the evidence. Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988). If a motion for summary judgment is properly supported, the burden shifts to the non-movant to show that a genuine issue exists. Donovan v. Agnew, 712 F.2d 1509, 1516 (1st Cir. 1983).

Affidavits supporting or opposing a motion for summary judgment "[must] be made on personal knowledge, [must] set forth

7

such facts as would be admissible in evidence, and [must] show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Opposing affidavits also "must set forth specific facts showing that there is a genuine issue for trial." Id.. Summary judgment motions cannot therefore be defeated by an expert's affidavit that contains conclusory assertions with respect to the ultimate legal issues, see Bowen v. Manchester, 966 F.2d 13, 18 n.16 (citation omitted), or is without a foundation to indicate the basis for the opinion. See Price v. General Motors Corp., 931 F.2d 162, 165 (1st Cir. 1991) (citing Lynch v. Merrell-National Lab., 830 F.2d 1190, 1193-96 (1st Cir. 1987); Connell v. Bank of Boston, 924 F.2d 1169, 1177 (1st Cir.), cert. denied, 111 S. Ct. 2828 (1991).

3. Application

Dr. Geremia's qualifications are not questioned. He is a mechanical engineer with experience in inspecting disposable butane lighters allegedly involved in accidents and has examined the BIC J-6 lighter in this case. The parties concede that debris was found in the valve and globe seal area after the accident. They disagree, however, as to when the debris entered the lighter. Dr. Geremia provided the following facts to support

8

his opinion that there must have been debris in the lighter before and at the time of the accident:

> (1) chlorine, zinc, copper, and aluminum debris were found in the lighter at the time of his inspection two months after the fire;

> (2) although some of the debris appeared to be corrosion product, thus suggesting that it entered the lighter after the fire, much of the debris did not have that appearance; and

> (3) gouge marks found on the surface of the jet were typical of an abrasion process due to foreign material lodged between the jet's surface and the valve body rather than normal wear and tear.

BIC admits (1) that experts can distinguish between corrosion and noncorrosion product and (2) that it is possible to determine whether gouge marks were caused by debris rather than normal wear and tear. Thus, BIC's challenge to Dr. Geremia's testimony is based on BIC's disagreement with the interpretation that Dr. Geremia has given to specific pieces of evidence using generally accepted methods. Since I conclude that plaintiffs have supplied specific credible facts to support Dr. Geremia's opinions, I am not prepared to discount those opinions in ruling on this motion for summary judgment. Simply stated, this dispute involves a question of credibility that cannot be resolved on a motion for

9

summary judgment.[3]

Finally, BIC contends that plaintiffs' case is deficient because Dr. Geremia is unfamiliar with the manufacturing process of the J-6 lighter and is unable to explain how the debris entered the lighter during the manufacturing process. While this too may affect the credibility of Dr Geremia's testimony, it cannot be a basis for granting summary judgment to BIC because plaintiffs have no obligation to prove the specific source of a design or manufacturing defect so long as they prove that the defect existed when it left the manufacturer's control. See Buttrick v. Lessard, 110 N.H. 36, 39 (1969); Holloway v. General Motors Corporation, 271 N.W.2d 777, 780-81 (1977).[4]

## III.  CONCLUSION

For the foregoing reasons, BIC's motion for summary judgment

--------

[3] BIC also complains that Dr. Geremia altered his opinions in response to testimony offered by the defendant's experts. While such changes may bear on Dr. Geremia's credibility, they are not an appropriate basis on which to grant a motion for summary judgment.

[4] I do not consider the impact of this argument on plaintiffs' negligence claims because BIC has not specifically challenged these claims on this basis.

(document no. 49) is denied.

      SO ORDERED.


                                    _____
                                    Paul Barbadoro
                                    United States District Judge

June 3, 1993

cc:  David Killkelly, Esq.
     Mark Sullivan, Esq.
     Chester Janiak, Esq.
     Thomas Kelliher, Esq.